**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 27 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

DARREN EUGENE PERKINS,

      Plaintiff-Appellant,

v.

KANSAS DEPARTMENT OF
CORRECTIONS; LES DERSTEIN,
Unit Manager, El Dorado
Correctional Facility; MICHAEL A.
NELSON, Warden, El Dorado
Correctional Facility; WILLIAM
CUMMINGS, Risk Manager, El
Dorado Correctional Facility;
CHARLES SIMMONS, Secretary of
Corrections, El Dorado Correctional
Facility; PRISON HEALTH
SERVICES; (NFN) AYENI, Regional
Medical Director for the Kansas
Department of Corrections,

      Defendants-Appellees.

No. 98-3005

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 97-CV-3460)

---

Submitted on the briefs:

Darren Eugene Perkins, pro se.

Hsingkan Chiang, Assistant Attorney General, Topeka, Kansas, for Defendants-Appellees.

---

Before **PORFILIO** , **BARRETT** , **KELLY** , Circuit Judges.

---

**PORFILIO** , Circuit Judge.

---

Plaintiff, a pro se prisoner who is HIV positive, [1] appeals the district court's dismissal of his civil rights action [2] seeking redress for (1) being required to wear a face mask whenever he leaves his cell; (2) being denied all outdoor exercise for more than nine months; and (3) being denied treatment for his serious medical condition. The district court granted plaintiff leave to proceed informa pauperis under 28 U.S.C. § 1915. Thereafter, the court sua sponte dismissed the action pursuant to § 1915(e)(2)(B)(ii), concluding that the complaint failed to state a claim upon which relief can be granted. The dismissal occurred before the

---

[1] "HIV" stands for human immunodeficiency virus, which can cause acquired immunodeficiency syndrome ("AIDS"), a "secondary immunodeficiency syndrome . . . characterized by opportunistic infections, malignancies, neurologic dysfunction, and a variety of other syndromes." The Merck Manual of Diagnosis and Therapy 77 (Robert Berkow, M.D. et al. eds., 16th ed. 1992).

[2] Although it appears that plaintiff actually filed two separate complaints on the same day, the district court assigned both of them the same case number and treated them as though they were a single action. Therefore, we will consider plaintiff's allegations in the two documents and attachments as a single, integrated complaint.

complaint was served on defendants. Our jurisdiction over this appeal arises under 28 U.S.C. § 1291. [3]

## I. Standard of Review.

At the outset, we must determine the appropriate standard under which to review the district court's dismissal. Section 1915(e)(2)(B)(ii), which was added to the statute as part of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, §§ 801-10, 110 Stat. 1321, provides that "the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief can be granted." This language parallels that of Federal Rule of Civil Procedure 12(b)(6). We have traditionally applied a de novo standard of review to dismissals made under Rule 12(b)(6). See, e.g., Kidd v. Taos Ski Valley, Inc., 88 F.3d 848, 854 (10th Cir. 1996). We agree with our sister circuits that a similar de novo standard should govern review of dismissals under § 1915(e)(2)(B)(ii). See Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998), pet'n for cert. filed, (U.S. Nov. 17, 1998) (No. 98-7214); Black v. Warren, 134 F.3d 732, 733 (5th Cir. 1998); Mitchell v. Farcass, 112 F.3d 1483, 1489-90 (11th Cir. 1997); McGore v. Wrigglesworth, 114 F.3d 601, 604

---

[3] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.(G). The case is therefore ordered submitted without oral argument.

(6th Cir. 1997); Atkinson v. Bohn , 91 F.3d 1127, 1128 (8th Cir. 1996).

Therefore, we will review the present dismissal de novo.

Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend. See Whitney v. New Mexico , 113 F.3d 1170, 1173 (10th Cir. 1997). In determining whether dismissal is proper, we must accept the allegations of the complaint as true and we must construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff. See Breidenbach v. Bolish , 126 F.3d 1288, 1292 (10th Cir. 1997). Further, we must liberally construe the allegations of a pro se complaint. See Haines v. Kerner , 404 U.S. 519, 520-21 (1972). Because we conclude that the district court prematurely dismissed certain of plaintiff's claims, we affirm in part, reverse in part, and remand for further proceedings.

## II. Factual Background.

Plaintiff, who alleges that he has had AIDS since September 1993, has been housed in administrative segregation at the state prison in El Dorado, Kansas, during all times pertinent to this action. The bulk of plaintiff's claims arise out of an incident that occurred on January 27, 1997. On that day, plaintiff became angry with two prison guards and then spat on them when he went outside into the

prison yard. Since then, plaintiff has been required to wear a face mask that covers his entire head whenever he leaves his cell and he has been denied all exercise outside his cell. [4]

Plaintiff alleges that having to wear the face mask is demeaning and causes him great emotional and psychological distress, which further weakens his immune system and hastens his death. [5] Plaintiff alleges similar psychological and physical injuries from the denial of outdoor exercise. He says the only way he can avoid injury arising from the face mask restriction is to decline to leave his cell--even for showers and medical appointments--which he has done for extended periods of time.

Plaintiff contends he had no prior warning of the consequences of spitting on a guard and he has never been given a hearing on the face mask and exercise restrictions. He also alleges other inmates who have spat on guards, other inmates, and/or common areas of the prison have not had to endure similar restrictions. Plaintiff asserts he is being punished simply because he is HIV positive. Plaintiff claims the face mask and out-of-cell exercise restrictions

---

[4] In his February 1998 appellate brief, plaintiff indicated these restrictions were still in effect, and appellees did not dispute this representation in their response brief.

[5] Plaintiff alleges that he caught pneumonia in February 1997 and since that time has been plagued with respiratory infections, weakness, shortness of breath, and fevers.

violate his rights to due process and equal protection, contravene the *ex post facto* prohibition, and constitute cruel and unusual punishment.

Plaintiff also contends he has been denied treatment for his serious medical needs, in violation of the Eight Amendment, because he has not been treated with a particular drug. Plaintiff concedes that he has received treatment for his HIV, but he contends he will become immune to the drugs with which he is being treated if he is not also given a different drug, called a protease inhibitor.

The district court explicitly addressed only the due process and Eighth Amendment aspects of the face mask and exercise restrictions. Noting that prison officials are given great deference in adopting and implementing policies aimed at preserving internal order, discipline, and security, the court concluded the restrictions did not give rise to a due process claim because they were imposed "in direct response to an incident of disruptive conduct for which plaintiff accepts responsibility, and the restrictions are reasonably related to the legitimate goal of maintaining order and security." R., Doc. 3 at 3 (citing Bell v. Wolfish, 441 U.S. 520, 547 (1979)).

The court also concluded these restrictions did not give rise to an Eighth Amendment claim because plaintiff did not establish that prison officials acted with deliberate indifference to his health or safety. See Wilson v. Seiter, 501 U.S. 294, 303 (1991) (adopting deliberate indifference as standard for subjective

component of Eighth Amendment claims based on conditions of confinement).

Specifically, the court determined that plaintiff's claim failed because he

"show[ed] no excessive risk to his well-being, [and there was no] evidence to

reasonably suggest defendants acted without regard to plaintiff's circumstances."

R., Doc. 3 at 3.

Likewise, the court held plaintiff failed to state an Eighth Amendment

claim based on the denial of medical treatment. The court concluded plaintiff's

pleadings showed that prison officials recognized his condition as serious and

provided him ongoing medical care for that condition; plaintiff simply disagreed

with them as to the exact treatment he should receive. We will address each of

these claims in turn. As an initial matter, however, we must consider the effect of

the limitation provisions of 42 U.S.C. § 1997e(e) on plaintiff's claims.

### III.  42 U.S.C. § 1997e(e).

Plaintiff filed the present action after the effective date of the PLRA, which

provides in part that "[n]o Federal civil action may be brought by a prisoner

confined in a jail, prison, or other correctional facility, for mental or emotional

injury suffered while in custody without a prior showing of physical injury."  42

U.S.C. § 1997e(e).  Courts have generally construed this provision as a limitation

on the relief a prisoner can receive for injuries suffered while in custody.     See,

e.g., Zehner v. Trigg  , 133 F.3d 459, 463 (7th Cir. 1997) ("§ 1997e(e) only limits

-7-

the relief to which plaintiffs are entitled; it does not restrict their access to the courts to press claims for which the substantive law provides an underpinning"). Therefore, although "mental and emotional distress can constitute a compensable injury in suits for damages under 42 U.S.C. § 1983 based upon violations of constitutional rights[, § 1997e(e) provides] that such a suit cannot stand unless the plaintiff has suffered a physical injury in addition to mental or emotional harms." Id. at 461.

Here, the primary harm plaintiff alleges as a result of both the exercise and the face mask restrictions is mental or emotional. Plaintiff does allege physical harm as well, because he claims his mental anguish has been so severe that it has caused his physical condition to deteriorate and has hastened his death. As yet, neither the parties nor the district court have addressed whether plaintiff's allegations are sufficient to avoid the limitation contained in § 1997e(e). We, therefore, will leave this issue to the district court to decide in the first instance. We note that plaintiff has requested three types of damages in his complaint: compensatory, punitive, and nominal. On remand, the district court will have to separately determine whether § 1997e(e) prohibits plaintiff's claims for each of these types of damages. [6]

---

[6]     The plain language of § 1997e(e) applies only to actions "for mental or emotional injury." While a claim for compensatory damages would clearly be
                                                                    (continued...)

If, on remand, the district court concludes that plaintiff's claims for damages are barred by § 1997e(e), plaintiff may still have an avenue of redress through injunctive relief. Although plaintiff's complaint does not include an express request for injunctive relief, a liberal construction of his allegations demonstrates a clear desire for injunctive relief. Our research reveals that only two circuits have considered whether § 1997e(e) limits claims for injunctive or declaratory relief, and both have concluded that it does not. See Davis v. District of Columbia, 158 F.3d 1342, 1346 (D.C. Cir. 1998); Zehner, 133 F.3d at 462-63. As the D.C. Circuit explained in Davis, "the statute does not materially thwart actions for injunctions or declaratory judgments, for the simple reason that a plaintiff's ability to claim such relief is normally independent of any injury other than the threatened loss of the constitutional right." 158 F.3d at 1346. We agree

---

[6](...continued)
barred in the absence of any showing of physical injury, it is not clear that a claim for either punitive or nominal damages would also be barred. Nominal damages, for instance, are available for the violation of certain "absolute" constitutional rights, such as due process, without any showing of actual injury. Carey v. Piphus, 435 U.S. 247, 266 (1978). Thus, one could argue that a claim for nominal damages arising from a due process violation such as that alleged here is not actually an action "for mental or emotional injury" that would be subject to the limitations of § 1997e(e). See Davis v. District of Columbia, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (noting possibility that § 1997e(e) would not apply to claim for nominal damages); Wright v. Miller, 973 F. Supp. 390, 396 (S.D.N.Y. 1997) (noting that § 1997e(e) would bar plaintiffs from recovering any damages other than nominal ones for alleged due process violations that caused only mental injury).

with our sister circuits that § 1997e(e) does not affect actions for declaratory or injunctive relief. Therefore, even if the district court determines that plaintiff cannot pursue his damage claims arising from the face mask and exercise restrictions, § 1997e(e) would not bar claims for injunctive relief relating to those restrictions.

## IV. Due Process.

"The Fourteenth Amendment prohibits any State from depriving a person of life, liberty, or property without due process of law." Meachum v. Fano, 427 U.S. 215, 223 (1976). A prisoner's liberty interests may arise either from the Due Process Clause itself or from state law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983). "The Due Process Clause standing alone offers prisoners only a narrow range of protected liberty interests." Abbott v. McCotter, 13 F.3d 1439, 1442 (10th Cir. 1994) (quotation omitted). State-created liberty interests, in turn, are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995) (citations omitted).

In Sandin, the prisoner contended that the disciplinary hearing that preceding his placement in disciplinary segregation did not afford him procedural

due process.   Id. at 476.  The Court concluded, at the summary judgment stage, that the prisoner's "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest" and, therefore, he had no constitutional right to due process in connection with that confinement.   Id. at 486.  To reach this conclusion, the Court carefully examined the specific conditions of the prisoner's confinement.  The Court determined that the prisoner's conditions essentially "mirrored those conditions imposed upon inmates in administrative segregation and protective custody," so the prisoner's "confinement did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction."   Id.  Based upon its comparison of inmates inside and outside disciplinary segregation, the Court concluded that the conditions to which the prisoner was subjected as a result of the allegedly faulty disciplinary hearing were "within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life," and, therefore, neither the Due Process Clause nor state law afforded the prisoner a protected liberty interest.   Id. at 487.

Here, the district court did not have evidence before it from which it could engage in the analysis required by   Sandin  and determine whether the conditions of plaintiff's confinement presented the type of atypical, significant deprivation that would implicate a liberty interest.  Plaintiff's allegations, accepted as true,

showed that he is confined in an eight-foot by fourteen-foot concrete cell for twenty-three and one-half hours a day. He is permitted to leave his cell for thirty minutes each day, to take a shower, but he must wear the face mask when he is out of his cell. Plaintiff has not been permitted exercise outside his cell for over a year.

Plaintiff contends that no other inmates bear similar restrictions, and there is no evidence in the record at present to contradict this allegation. On appeal, appellees argue that the conditions of plaintiff's confinement do not represent an atypical and significant hardship because "[i]t is ordinary for prisoners to be locked down in segregation for various offenses and to be isolated from others due to extreme behavior." Appellees' Br. at 5. This evidence was not before the district court at the time plaintiff's claim was dismissed, and, in any event, it does not fully address both the duration and degree of plaintiff's restrictions as compared with other inmates. See Sandin, 515 U.S. at 486. Based upon our review, we conclude the district court erred in sua sponte dismissing plaintiff's due process claim.

## V. Eighth Amendment.

"The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishments on those convicted of crimes." Wilson, 501 U.S. at 296-97

(citation and quotation omitted). "Punishments incompatible with the evolving standards of decency that mark the progress of a maturing society or involv[ing] the unnecessary and wanton infliction of pain are repugnant to the Eighth Amendment." Hudson v. McMillian, 503 U.S. 1, 10 (1992) (quotations omitted) (alteration in original).

An Eighth Amendment claim has both an objective component–whether the deprivation is sufficiently serious–and a subjective component–whether the official acted with a sufficiently culpable state of mind. See Wilson, 501 U.S. at 298-99. In cases challenging the conditions of a prisoner's confinement, the subjective standard is one of deliberate indifference to inmate health or safety. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). All three of plaintiff's Eighth Amendment claims challenge the conditions of his confinement and, therefore, are analyzed under a deliberate indifference standard. [7]

_____

[7]     Appellees characterize plaintiff's challenge to the face mask restriction as a challenge to the use of excessive physical force, to which a different subjective standard would apply. See Hudson, 503 U.S. at 6-7 ("[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."). We conclude that plaintiff's allegations are more accurately categorized as a challenge to the conditions of his confinement, however, because the face mask restriction is an ongoing condition and plaintiff does not allege the application of physical force by prison officials in connection with the mask.

For a prison official to be found liable of deliberate indifference under the Eighth Amendment, the official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must draw the inference." Id. at 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842 (citation omitted). With these standards in mind, we turn to the first of plaintiff's Eighth Amendment claims, relating to the deprivation of outdoor exercise.

**A. Exercise Restriction.**

As this and other courts have recognized, "some form of regular outdoor exercise is extremely important to the psychological and physical well being of inmates." Bailey v. Shillinger, 828 F.2d 651, 653 (10th Cir. 1987) (citing Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979)); accord Williams v. Greifinger, 97 F.3d 699, 703-05 (2d Cir. 1996) (discussing contours of right to out-of-cell exercise); Mitchell v. Rice, 954 F.2d 187, 191 (4th Cir. 1992) ("Generally a prisoner should be permitted some regular out-of-cell exercise."); Davenport v. DeRobertis, 844 F.2d 1310, 1313 (7th Cir. 1988) (upholding district court finding

-14-

that allowing inmates in segregation unit only one hour of out-of-cell exercise a week violated Eighth Amendment). "Although we have never expressly held that prisoners have a constitutional right to exercise, there can be no doubt that total denial of exercise for an extended period of time would constitute cruel and unusual punishment prohibited by the Eighth Amendment." Housley v. Dodson, 41 F.3d 597, 599 (10th Cir. 1994).

In Housley, we concluded that an inmate who alleged he had received only thirty minutes of out-of-cell exercise in three months stated an Eighth Amendment claim, and we reversed the district court's dismissal of his action. Id. at 599. In reaching this conclusion, we noted that "[i]n Bailey, we found that even a convicted murderer who had murdered another inmate and represented a major security risk was entitled to outdoor exercise." Id. In light of our previous holdings, we conclude the district court here erred when it held that plaintiff's allegations about the extended deprivation of outdoor exercise "show[ed] no excessive risk to his well-being." R. Doc. 3 at 3.

Accepting the allegations of plaintiff's complaint as true, they also establish that prison officials knew of his continuing deprivation of outdoor exercise. Not only did the officials renew the restriction on a weekly basis, but plaintiff filed prison grievances challenging the restriction. We conclude that plaintiff's complaint presents facts from which a factfinder could infer both that

-15-

prison officials knew of a substantial risk of harm to plaintiff's well being resulting from the lengthy denial of outdoor exercise and that they disregarded that harm. [8]  Therefore, the district court erred in sua sponte dismissing plaintiff's Eighth Amendment claim for deprivation of outdoor exercise.

## B. Face Mask Restriction.

Whether plaintiff's allegations concerning the face mask restriction are sufficient to state an Eighth Amendment claim presents a closer question.  While our research revealed no cases addressing a similar restriction, the Seventh Circuit's opinion in   Anderson v. Romero  , 72 F.3d 518 (7th Cir. 1995), provides some guidance.  We begin with the proposition that "the Eighth Amendment forbids the state to punish people for a physical condition, as distinct from acts." Id. at 526.  Thus, prison officials may not punish plaintiff for being an HIV carrier.  See id.  Further, the infliction of psychological pain can violate the Eighth Amendment.   See id. at 523.  For example, disseminating "humiliating but penologically irrelevant details of a prisoner's medical history," or "branding or

---

[8]      As in  Housley , "[w]e recognize . . . that what constitutes adequate exercise will depend on the circumstances of each case, including the physical characteristics of the cell and jail and the average length of stay of the inmates." 41 F.3d at 599;   see also  Mitchell , 954 F.2d at 191-92 (applying a totality of the circumstances analysis to restrictions on out-of-cell exercise and noting that "penological considerations may, in certain circumstances, justify restrictions"). Whether unusual circumstances exist to justify the restrictions imposed here, however, cannot be answered at this stage of the litigation.   See Mitchell , 954 F.2d at 192.

tatooing HIV-positive inmates . . . or making them wear a sign around their neck that read 'I AM AN AIDS CARRIER!'" may violate the Eighth Amendment.      <u>Id.</u>

Here, plaintiff alleges that he is forced to wear the face mask, which covers his entire head, simply as punishment for being HIV positive.  He notes that the face mask restriction does not truly prevent him from spitting on inmates or guards, because he has an opportunity to do so every time he takes a shower.  Plaintiff further alleges that, despite these opportunities for spitting, he has not spit on anyone since the single incident on January 27, 1997.  Thus, he contends, the face mask is simply a punishment for his HIV status, meant to brand him as an HIV carrier and humiliate him whenever he leaves his cell.  Plaintiff notes that, in addition to requiring him to wear the face mask, prison officials have placed a sign on his cell door warning that he is extremely dangerous.

Plaintiff alleges that being subjected to this constant humiliation has resulted in extreme mental anguish and has hastened his death.  Plaintiff further alleges that prison officials knew of the harm they were inflicting, but disregarded it.  Under these circumstances, we conclude the district court erred in dismissing plaintiff's claim sua sponte without at least ordering defendants to prepare a report pursuant to the guidelines of    <u>Martinez v. Aaron</u>, 570 F.2d 317 (10th Cir. 1978).

### C. Medical Treatment.

Plaintiff's final Eighth Amendment claim relates to the medical treatment he has received. Prison officials violate the Eighth Amendment when they are deliberately indifferent to the serious medical needs of prisoners in their custody. See Estelle v. Gamble, 429 U.S. 97, 104-06 (1976). A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation. See id. at 105-06. Moreover, a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation. See id. at 107; Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir.1993).

Plaintiff concedes that he has received treatment for his HIV with two drugs, AZT and 3TC. He claims, however, that the HIV will become immune to those drugs if he is not also given a protease inhibitor. [9] Plaintiff states that he has stopped taking the AZT and 3TC until he can receive a protease inhibitor. Our review of plaintiff's complaint shows that prison officials have recognized his serious medical condition and are treating it. Plaintiff simply disagrees with

---

[9]     Protease inhibitors are one of three types of drugs used to treat HIV by interfering with the replication of the virus. Protease inhibitors inhibit the action of the enzyme protease, which functions at the end of the HIV replication cycle. The other two types of drugs are nucleosides (such as AZT and 3TC) and non-nucleosides. These drugs inhibit the action of the enzyme reverse transcriptase, which functions at the beginning of the HIV replication cycle. See Martin Markowitz, M.D., Combination Therapy for HIV Infection, (Oct. 1997) <http://www.iapac.org/clinmgt/avtherapies/patient/combbk.html#whathiv>.

medical staff about the course of his treatment.  This disagreement does not give rise to a claim for deliberate indifference to serious medical needs.   Therefore, the district court properly dismissed this Eighth Amendment claim.

## VI.  Conclusion.

Based upon our review, we conclude the district court properly dismissed plaintiff's Eighth Amendment claim based on the alleged denial of medical treatment.  We further conclude, however, that the district court erred in sua sponte dismissing plaintiff's due process and Eighth Amendment claims based on the alleged exercise and face mask restrictions.  Therefore, we must remand these claims to the district court.  On remand, the district court should determine whether § 1997e(e) precludes plaintiff from pursuing claims for damages arising from these restrictions.  The court also should address plaintiff's ex post facto and equal protection claims, which it did not consider initially.

Accordingly, the judgment of the United States District Court for the District of Kansas is AFFIRMED in part, and REVERSED in part, and the case is REMANDED for further proceedings consistent with this opinion.         [10]

---

[10]     We will not consider plaintiff's affidavit requesting that we direct the Kansas Department of Corrections to convert his indeterminate sentence to a determinate sentence.  Plaintiff did not raise this issue in the district court.