**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 23 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CHESTER L. BLUM,

      Petitioner-Appellant,

v.

FEDERAL BUREAU OF PRISONS,

      Respondent-Appellee.

No. 99-1055
(D.C. No. 98-D-2357)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **EBEL** and **LUCERO**, Circuit Judges.

      Petitioner-Appellant Chester Blum brought a <u>pro se</u> petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2241. Blum raised five claims to establish

that his sentence was enhanced without due process of law by prison officials in

two related disciplinary hearings. The district court <u>sua sponte</u> denied Blum's

petition for relief prior to service of process on respondent, the Federal Bureau of

---

      [*] After examining appellant's brief and the appellate record, this panel has
determined unanimously that oral argument would not materially assist the
determination of this appeal. <u>See</u> Fed. R. App. P. 34(a)(2) and 10th Cir. R.
34.1(G). The case is therefore ordered submitted without oral argument. This
Order and Judgment is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be
cited under the terms and conditions of 10th Cir. R. 36.3.

Prisons ("BOP") and denied Blum's motion to proceed in forma pauperis on appeal.  We deny Blum's application for in forma pauperis status, and dismiss.

We construe the dismissal of Blum's § 2241 petition as a dismissal for frivolousness under 28 U.S.C. § 1915(e)(2)(B)(i) because (1) he was proceeding in forma pauperis; (2) dismissal occurred prior to service of process; and (3) the district court found most of Blum's claims "without merit."        See Rourke v. Thompson , 11 F.3d 47, 49 (5th Cir. 1993) ("The district court dismissed [plaintiff's § 2241] petition prior to service of process on the defendants;  thus, we find that it dismissed the petition as frivolous under 28 U.S.C. § 1915(d)," the precursor to § 1915(e).)  We review a dismissal under § 1915(e)(2)(B)(i) for abuse of discretion.   See McWilliams v. Colorado   , 121 F.3d 573, 574-75 (10th Cir. 1997).

On February 12, 1998, Blum, a prisoner at the United States Penitentiary at Leavenworth, Kansas, was found guilty at a prison disciplinary hearing of escape from a secure institution and possession, manufacture, or introduction of a hazardous tool.  Blum appealed his disciplinary conviction, and on March 31, 1998, the BOP regional director ordered a de novo rehearing of the charges.  On May 5, 1998, Blum was again found guilty of the disciplinary charges against him, and was punished with disciplinary segregation for ninety days, loss of fifty-

four days of good time credit, and a disciplinary transfer to the United States Penitentiary in Florence, Colorado.

Blum asserts a due process violation at his disciplinary hearing on February 12, 1998 because his conviction was not supported by evidence in the record. This argument fails because Blum had a de novo rehearing on May 5, 1998 regarding the disciplinary charges against him. Blum was convicted at that rehearing and his subsequent segregation, loss of good-time credit, and transfer were sanctions imposed as a result of the second hearing. Thus, even if there were due process violations at the February 12, 1998 hearing, we would have no basis for overturning Blum's conviction at his May 5, 1998 hearing.[1]

Blum's second claim alleges a violation of due process under Hewitt v. Helms, 459 U.S. 460 (1983), because his May 5 rehearing was not held within a reasonable time after it was ordered on March 31, and a violation of due process

_____

[1] Blum points us to a provision of BOP Directive 5270.07 which states:

> Where a remand is directed, the appropriate Unit Discipline Committee or DHO [Disciplinary Hearing Officer] is bound by the original sanction(s), except where the remand is made specifically because of the sanction . . . .

This language has no bearing on Blum's appeal because there was no remand directed regarding Blum's disciplinary conviction. Rather, his disciplinary conviction on February 12, 1998 was reheard anew on May 5.

under Sandin v. Conner, 515 U.S. 472 (1995), because between March 31 and May 5, prison officials continued to house him in harsh, disciplinary segregation.[2]

In Hewitt, the Court held that while a prisoner has no right under the Due Process Clause to remain within the general population, id. at 468, the state of Pennsylvania had created a protected liberty interest through its prison regulations to engage in an "informal, nonadversary review of the information supporting [the prisoner's] administrative confinement . . . within a reasonable time after confining him to administrative segregation," id. at 472. However, the Court concluded that the prisoner received all the process due, in part because his hearing took place five days after transfer to administrative segregation. Id. at 477. Blum compares his case to Hewitt and asserts a due process violation occurred because prison officials violated regulations in holding his rehearing nearly five weeks after it was ordered.[3]

The error in this argument, besides the fact that the Pennsylvania regulations at issue in Hewitt have no relevance to Blum's federal incarceration in Kansas, is that the Supreme Court itself no longer follows the Hewitt

---

[2] Blum also refers to this type of segregation as "punitive" confinement or detention.

[3] We reject Blum's conclusory assertion that we should somehow infer that the result in his rehearing was prejudiced by the fact it was not held until May 5th or by the fact that he had allegedly been "predesignated" to the federal prison in Florence, Colorado. (Aplt. Br. at 11.)

methodology to determine whether regulations create liberty interests protected by the Due Process Clause. In <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), the Court stated:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, e.g., <u>Vitek</u> [v. Jones, 445 U.S. 480, 493 (1980)] (transfer to mental hospital), and <u>Washington</u> [v. Harper, 494 U.S. 210, 221-222 (1990)] (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

<u>Id.</u> at 483-84 (other internal citation omitted). In <u>Sandin</u>, "the Court held that the plaintiff's discipline in segregated confinement was not the sort of atypical, significant deprivation that would give rise to a liberty interest entitled to due process protection." <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412 (10th Cir. 1996). "To reach this conclusion, the Court carefully examined the specific conditions of the prisoner's confinement. The Court determined that the prisoner's conditions essentially 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' so the prisoner's 'confinement did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction.'" <u>Perkins v. Kansas Dept. of Corrections</u>, 165 F.3d 803, 808-09 (10th Cir. 1999) (quoting <u>Sandin</u>).

In Perkins, this court reversed a district court dismissal of a prisoner's due process claim under Sandin where the prisoner alleged that he was wrongfully confined to an eight-foot by fourteen-foot concrete cell for twenty-three and one-half hours a day; was permitted to leave his cell for thirty minutes a day to take a shower, but, when he left his cell, was required to wear a face mask covering his entire head; and was not permitted to exercise outside his cell for over a year. Id. at 809. Unlike the prisoner in Perkins, here, Blum has alleged no facts to show that his confinement presented the type of atypical, significant deprivation that would implicate a liberty interest. Blum alleges that his disciplinary segregation left him without "store privileges, radio, phone calls, etc. that other inmates just being held in segregation had the privileges of," and that he wrongfully endured mental stress for being punished for an offense "that was fabricated against" him. (Aplt. Br. at 10.) Though mental stress and the loss of benefits complained of may be difficult, we conclude that such conditions are not different in such degree and duration as compared with "the ordinary incidents of prison life" to be a protected liberty interest under the Due Process Clause. See Sandin, 515 U.S. at 484; see also Hewitt, 459 U.S. at 467 ("[L]awfully incarcerated persons retain only a narrow range of protected liberty interests. . . [O]ur decisions have consistently refused to recognize more than the most basic liberty interests in prisoners."); Templeman v. Gunter, 16 F.3d 367, 369 (10th Cir. 1994) ("Changing

an inmate's prison classification ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison.").

Blum's third claim alleges interference with and denial of the constitutional right of access to the courts and a First Amendment right to petition the government because the charges levied against him that warranted a disciplinary hearing were supposedly "fabricated" by the investigating officer in retaliation for Blum's prior filing of grievances in regards to his placement in the prison's special housing unit. (Aplt. Br. at 12.). We reject this argument, as the district court below did, because even if an officer were to have filed disciplinary charges against a prisoner for retaliatory purposes, that reason by itself does not provide a basis for this court on habeas review to expunge Blum's underlying disciplinary conviction.[4]

Blum also alleges his due process rights were violated because he was denied a purported mandatory right under 28 C.F.R. § 40.7 to appeal to the BOP general counsel the regional director's decision to rehear, instead of dismiss outright, the disciplinary charge. 28 C.F.R. § 40.7 is contained within the

_____

[4] To the extent that Blum's characterization of the charges against him as "fabricated" is a challenge to the sufficiency of the evidence, after reviewing the record, we find that there was sufficient evidence at the May 5 rehearing to support a conviction. Most compelling was the information provided by two confidential sources that detailed the contraband items seized despite no opportunity to observe the items once they were detected by the prison staff. (App. Att. 15.)

Minimum Standards for Inmate Grievance Procedures, regulations authorized by

42 U.S.C. § 1997e(b), which is part of the Prison Litigation Reform Act of 1995.

In relevant parts, 28 C.F.R. § 40.7 provides:

> (d) <u>Reasoned, written responses.</u>  Each grievance [filed by an inmate] shall be answered in writing at each level of decision and review.  The response shall state the reasons for the decision reached and shall include a statement that the inmate is entitled to further review, if such is available, and shall contain simple directions for obtaining such review.
>
> (e) <u>Fixed time limits</u>.  Responses shall be made within fixed time limits at each level of decision.  Time limits may vary between institutions, but expeditious processing of grievances at each level of decision is essential to prevent grievance from becoming moot.  Unless the grievant has been notified of an extension of time for a response, expiration of a time limit at any stage of the process shall entitle the grievant to move to the next stage of the process.  In all instances grievances must be processed from initiation to final disposition within 180 days, inclusive of any extensions.
>
> (f) <u>Review</u>.  The grievant shall be entitled to review by a person or other entity, not under the institution's supervision or control, of the disposition of all grievances, including alleged reprisals by an employee against an inmate.  A request for review shall be allowed automatically without interference by administrators or employees of the institution and such review shall be conducted without influence or interference by administrators or employees of the institution.

The district court rejected Blum's due process argument premised on these

regulations "because Mr. Blum does not allege that he was denied any of the

process to which he is entitled pursuant to <u>Wolff v. McDonnell</u>, 418 U.S. 539,

563-66 (1974) . . . ."[5]  However, <u>Wolff</u> does not necessarily dispose of Blum's claim, because <u>Wolff</u> only addressed (as is relevant here) whether certain statutes and regulations, which were complied with, violated the Due Process Clause. <u>Wolff</u> did not address whether a due process claim arises when an agency <u>violates</u> its own regulations.  See <u>Mitchell v. Maynard</u>, 80 F.3d 1433, 1444-45 (10th Cir. 1996) (analyzing under <u>Wolff</u>, prisoner's claim that disciplinary hearing violated due process because unreliable evidence was admitted; separately analyzing under <u>Armstrong v. Manzo</u>, 380 U.S. 545 (1965), prisoner's claim that disciplinary hearing violated due process because defendants failed to follow their own established policy of banning staff members directly involved in the disciplinary case from being the disciplinary officer because "a fundamental requirement of due process is the opportunity to be heard"); <u>see also</u> <u>Caldwell v. Miller</u>, 790 F.2d 589, 609-10 (7th Cir. 1986) ("An agency must conform its actions to the

---

[5]To meet the standards of due process in a disciplinary proceeding under <u>Wolff</u>,

> the inmate must receive:  (1) advance written notice of the disciplinary charges;  (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense;  and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

<u>Superintendent v. Hill</u>, 472 U.S. 445, 454 (1985); <u>see also</u> <u>Mitchell v. Maynard</u>, 80 F.3d 1433, 1445 (10th Cir. 1996).  "If there is some evidence to support the disciplinary committee's decision . . . then the requirements of procedural due process have been met." <u>Id.</u>

- 9 -

procedures that it has adopted. An inmate, too, has the right to expect prison officials to follow its policies and regulations.") (internal citations omitted).

Nevertheless, we dismiss because even accepting Blum's allegations as true, there has been no violation of federal regulations. Under the regulations' plain language, a prisoner's claim is only entitled to review "by a person . . . not under the institution's supervision or control." 28 C.F.R. § 40.7(f). Blum's claim was reviewed by the BOP regional director, and Blum is only arguing on appeal that the BOP General Counsel should also have reviewed his claim. Since the BOP General Counsel and the Regional Director are equally independent from the local federal prison, Blum received one level of independent review, which is all that § 40.7(f) requires. Blum does not allege, nor does the record support, that the Regional Director was, and the General Counsel was not, under Blum's prison's "supervision or control." Accordingly, the defendants complied with federal regulations in its handling of Blum's grievance, and no due process violation thereby arises.

Blum also alleges interference with and denial of the constitutional right of access to the courts because he, once again, allegedly was denied his mandatory right under 28 C.F.R. § 40.7 to appeal to the BOP general counsel the regional director's decision to rehear, instead of dismiss outright, the disciplinary charge. According to Blum, though he had appealed the regional director's rehearing

order, a rehearing was held despite the absence of any resolution of his intervening appeal to the BOP general counsel. Blum contends that under federal regulations, once he made his appeal to the BOP general counsel, "no further action by prison officials were allowed." (Aplt. Br. at 13.) The district court rejected this claim on jurisdictional grounds, finding in part that Blum had not alleged any "actual injury" in his ability pursue a habeas petition. We agree.

An inmate alleging a violation of constitutional access to the courts "must show actual injury." Lewis v. Casey, 518 U.S. 343, 349 (1996); Penrod v. Zavaras, 94 F.3d 1399, 1403 (10th Cir. 1996) (per curiam) (interpreting Lewis). For example, an inmate cannot bring a constitutional access to the court claim simply because that person's prison law library is subpar. See Lewis, 518 U.S. at 351. Rather, such an inmate "must go one step further and demonstrate that the alleged shortcomings in the library . . . hindered his efforts to pursue a legal claim." Id.; see also id. (stating that healthy inmate in a prison cannot claim constitutional violation because of inadequacy of the prison infirmary). Here, Blum has failed to show how an error, if any, in holding the disciplinary rehearing before resolution of his appeal to the BOP general counsel "hindered his efforts to pursue a legal claim" in the courts. Therefore, Blum has not suffered an actual injury from the alleged violation of internal grievance procedures, and his constitutional access to the courts claim was properly dismissed below. See

Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990);   ("[A]n isolated incident, without any evidence of improper motive or resulting interference with [the prisoner's] right to . . . access to the courts, does not give rise to a constitutional violation.").

Blum's fourth claim specifically alleges a denial of procedural due process under Wolff v. McDonnell.  In particular, Blum contends that he was denied advance written notice of the May 5 rehearing, even though he received written notice of the original February 12 hearing, and even though he received oral notice of the rehearing.  Blum argues that he was entitled to a written notice for the rehearing "due to changes in the charge or evidence."  (Aplt. Br. at 22.) However, the record belies any suggestion that the charges against Blum changed at the rehearing, and, as the district court explained, under Wolff, Blum is entitled to advance written notice of the disciplinary charges against him, not to written notice of the evidence that will be used at the disciplinary hearing.

Blum's fifth and final claim also alleges a denial of due process because the disciplinary hearing officer did not assess whether admitted evidence from two confidential informants was reliable.  For the same reasons well-articulated below, we disagree.  The reliability of the confidential informants was established by "some evidence" in the record, as the written statement of reasons indicates

that "the confidential informants had corroborating statements which added to their credibility."

The appeal is DISMISSED.

The mandate shall issue forthwith.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge