FILED
United States Court of Appeals
Tenth Circuit

September 25, 2007

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CHARLES D. FRIEDMAN,

      Plaintiff - Appellant,

v.

AARON D. KENNARD, Sheriff,
Salt Lake County, individually and in
his official capacity; ROLLIN COOK,
Chief Deputy, individually and in his
official capacity; PAM LOFGREEN,
Lieutenant, individually and in her
official capacity; R. EPPARD,
Sergeant, individually and in his
official capacity,

      Defendants - Appellees.

No. 07-4116
(D.C. No. 2:06-CV-538 TC)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **HARTZ**, and **GORSUCH**, Circuit Judges.

Charles Friedman, proceeding *pro se*, brought suit against various Salt Lake

County Sheriff's Office officials, alleging that they unconstitutionally deprived

---

[*]After examining appellant's brief and the appellate record, this panel has
determined unanimously that oral argument would not materially assist the
determination of this appeal. *See* Fed. R. App. P. 34(a)(2) and 10th Cir. R.
34.1(G). The case is therefore ordered submitted without oral argument. This
order and judgment is not binding precedent except under the doctrines of law of
the case, res judicata and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

him of access to the courts during his pretrial detention, in violation of 42 U.S.C. § 1983. The district court dismissed this matter pursuant to 28 U.S.C. § 1915(e)(2)(B). We affirm.

\*   \*   \*

Mr. Friedman, who was detained first at Cache County Jail and then transferred to the Salt Lake County Jail, makes essentially five separate claims.

*Count 1*. Mr. Friedman alleges that Cache County Jail officials denied him kosher meals and the opportunity to observe the Sabbath. For this, he wished to pursue a "*Bivens* action" in federal court and, while at the Salt Lake County Jail, sought assistance from the defendants on March 30, 2006. Compl. ¶¶ 1-9. According to Mr. Friedman, the defendants freely agreed to provide him a legal packet for civil rights actions from the federal court clerk's office. *Id*. ¶ 9. But, Mr. Friedman complains, in the following weeks, he did not receive any form discussing *Bivens* and thus filed this suit on June 2, 2006. At the same time, however, Mr. Friedman concedes that he did receive a legal packet during this period describing how to file federal civil rights complaints. *Id*. ¶25.

*Count 2*. Mr. Friedman alleges that, in addition to seeking relief in federal court, he wished to pursue his complaints about the lack of a kosher diet in state court, and on April 28, 2006 requested a legal packet for tort actions in Utah state courts. *Id*. ¶ 24. Mr. Friedman acknowledges that jail officials responded on May 10, 2006 by stating that they had requested the appropriate state court forms

for him and would deliver the materials as soon as they arrived. *Id.* ¶ 27. He acknowledges as well that he was able to correspond directly with officials in the Utah state court system and request a legal packet for himself, *id.* ¶ 28, though he contends that he was told that forms were available only online. Mr. Friedman surmises from this response that the promise by jail officials to provide him with paper forms was an intentional lie in an effort to deny him access to state courts.

*Count 3.* Mr. Friedman alleges that he was charged $10 for certain medical testing that should have been provided without charge, and that he sought to pursue this matter in state court. *Id.* ¶¶ 35-37. In aid of this effort, Mr. Friedman alleges that he again, on May 12, 2006, sought a legal packet for a state court tort action but did not receive one before filing this suit. *Id.* ¶¶ 38-39.

*Count 4.* Mr. Friedman contends that his access to the courts was unconstitutionally impaired because he was afforded only "golf pencils" to prepare his complaints.

*Count 5.* Mr. Friedman submits that, in response to his admittedly frequent use of the internal grievance system and his follow-on lawsuits, jail officials unconstitutionally retaliated by sending him to a higher security housing unit.

The district court concluded that all five counts of Mr. Friedman's complaint failed to state a claim for relief under 42 U.S.C. § 1983 and that it would be futile to allow him to amend his pleadings. Accordingly, on April 13,

2007, the district court dismissed the case pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief can be granted.

*   *   *

We review *de novo* the district court's dismissal of a case under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted. *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999). "Dismissal of a *pro se* complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Id.* In determining whether dismissal is proper, we accept the allegations of the complaint as true and construe them in the light most favorable to the plaintiff. *Id.* at 806. Conclusory allegations without supporting factual averments, however, are insufficient to state a claim, and the court accepts as true only the plaintiff's "well-pleaded factual contentions, not his conclusory allegations." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). When viewed against these standards, we believe dismissal of Mr. Friedman's claims was appropriate.

*Count 1*. Pretrial detainees have a constitutional right to adequate, effective, and meaningful access to the courts. *Love v. Summit County*, 776 F.2d 908, 912 (10th Cir. 1985). To assert a constitutional claim for violation of this right, a confined plaintiff must allege facts indicating (1) a denial of legal resources, and (2) that the denial of such resources hindered his or her efforts to

pursue a nonfrivolous claim. *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996) (citing *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). To be clear, however, the right of access to the courts does not entail a constitutional right to a law library or professional legal assistance. *Lewis*, 518 U.S. at 350. Instead, "meaningful access to the courts is the touchstone," *Bounds v. Smith*, 430 U.S. 817, 823 (1977), and the Supreme Court has encouraged local experimentation in various methods of assuring access to the courts, *Lewis*, 518 U.S. at 352. In fact, the Court has specifically condoned programs that "replace libraries with some minimal access to legal advice and a system of court-provided forms." *Id.*

We agree with the district court that the complaint, even liberally construed, does not allege a constitutionally cognizable denial of legal resources in Count 1. Although Mr. Friedman contends that he requested a packet that would help him pursue a *Bivens* action, he also concedes that jail officials provided him, in response to his request, with a "federal civil rights 'packet.'" Compl. ¶ 25. He pleads no facts to suggest that his federal civil rights packet differed from that commonly provided by the Utah federal district court, which the district court took notice contains sufficient information to allow Mr. Friedman to file his suit. D. Ct. op. at 7-8. Thus, Mr. Friedman's own pleading tends to defeat his claim. *See Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) (disregarding internally contradictory allegations).

Even if Mr. Friedman had pled a cognizable denial of legal resources, however, we would still hold that his complaint fails as a matter of law for the independent reason that it contains no facts from which one might discern that he was substantially hindered from pursuing a federal civil rights claim. Indeed, the complaint itself suggests otherwise. Mr. Friedman filed this federal civil rights complaint from jail on June 2, 2006, within just weeks of his initial request for legal assistance on March 30, 2006. It is 44 pages long and supported by numerous exhibits. For these reasons, we agree with the district court that "[p]laintiff clearly had no difficulty in filing this [federal civil rights] lawsuit, and it appears he could have just as easily pursued his underlying [federal civil rights lawsuit]." D. Ct. op. at 11. Indeed, as the district court further observed, Mr. Friedman has an extensive history of *pro se* litigation – including no fewer than 11 cases in the district court and 4 more in our own court in the last 8 years; the district court noted that he filed at least one of these actions during the very time period covered by this lawsuit.

*Counts 2-3*. These claims concern state tort actions rather than federal civil rights claims but fail for many of the same reasons as Count 1. Far from denying him the appropriate forms, Mr. Friedman's pleading reveals that jail officials expressly agreed to provide him with a legal packet for pursuing state tort actions. Compl. ¶ 27. To be sure, Mr. Friedman questions the sincerity of this pledge on the ground that he failed to obtain the forms himself, *id*. ¶ 28, but he offers no

factual basis from which a rational fact finder might suppose that jail officials could not have anticipated more success in obtaining court forms than Mr. Friedman experienced. Indeed, far from being completely rebuffed by state court officials, Mr. Friedman alleges that he was directed to the courts' website, *id.*, and it is entirely possible that jail officials, if they received the same response, could have (for example) downloaded and printed appropriate materials from the website for Mr. Friedman's use. Any possible inference of insincerity is further diminished by the fact that Mr. Friedman afforded jail officials little time to fulfill their promise – just three weeks – before filing his instant complaint. Finally, even if Mr. Friedman could state a basis for inferring the denial of constitutionally sufficient legal assistance, for reasons we have already explored with respect to Count 1 and think equally applicable here, we would nonetheless hold his claims barred for failure to plead facts from which we could infer that he was meaningfully hindered in his efforts to access the courts.

*Count 4.* Mr. Friedman complains that he is forced to employ "golf pencils" in the drafting of his pleadings, may purchase only six such pencils per week at the jail commissary, and has access to a pencil sharpener "every other day." Compl. ¶¶ 44-45. Even without discussing the penological interests that may be at play in the jail's decision to deny access to writing instruments that may be more easily employed as weapons, or the question whether the use of "golf pencils" constitutes a denial of constitutionally meaningful legal resources,

Mr. Friedman again fails to supply any facts from which we might infer that he has been hindered in his efforts to pursue his legal relief. Indeed, the pencils provided him were obviously sufficient to prepare this 44 page pleading, not to mention apparently many others besides it in recent weeks and months.

*Count 5*. Prison officials may not retaliate against an inmate because of the inmate's exercise of his or her right of access to the courts. *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). To withstand dismissal, however, a plaintiff must plead specific facts showing retaliatory motive. *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). Standing alone and without supporting factual allegations, temporal proximity between an alleged exercise of one's right of access to the courts and some form of jailhouse discipline does not constitute sufficient circumstantial proof of retaliatory motive to state a claim. *See, e.g.*, *Weatherall v. Scherbarth*, 208 F.3d 228, 2000 WL 223576, at *2 (10th Cir. Feb. 28, 2000); *Wright v. McCotter*, 172 F.3d 880, 1999 WL 76904, at *1 (10th Cir. Feb. 18, 1999).

In support of his retaliation claim, Mr. Friedman alleges only that shortly after his transfer to a higher security housing unit he received a letter from jail officials restricting his access to the jail grievance system because of recent abuse. He does not allege that his transfer was disciplinary as opposed to administrative in nature, or any other basis for inferring a linkage between his use of grievances and his transfer. Compl. ¶ 70. Because Mr. Friedman alleges no

more than temporal proximity between his alleged exercise of rights and his transfer, we must agree with the district court that he has failed to state a cognizable claim for retaliation. *Compare Smith*, 899 F.2d at 949 (stating a claim by alleging various other "suspicious circumstances" in addition to the timing of a transfer).

*   *   *

For the foregoing reasons, the district court's dismissal of the complaint is affirmed. With respect to Mr. Friedman's application to proceed *in forma pauperis* on appeal, the district court granted the request but did not address the various requirements for assessing partial payments under 28 U.S.C. § 1915. Accordingly, we required Mr. Friedman to submit an application for *in forma pauperis* status that included his prison trust account statement. Mr. Friedman did so on August 23, 2007, and we entered an order assessing partial payments the same day. Today, we reiterate that Mr. Friedman is given leave to proceed *in forma pauperis* in this court but remind him to continue making partial payments pursuant to our August 23, 2007 order until the filing fee is paid.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge