**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 12, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

KARL GRANT LOSEE,

      Plaintiff-Appellant,

v.

RICHARD GARDEN, Director of
Medical Service, Utah State Prison;
SIDNEY ROBERTS, Medical Doctor,
Utah State Prison; KENNON TUBBS,
Medical Doctor, Utah State Prison;

      Defendants-Appellees,
and

TOM PATTERSON, Executive
Director of Services, Utah State
Prison; NANCY HOWARD, Critical
Care Nurse, Utah State Prison; JON
HUNTSMAN, Jr., Governor; JACK
FORD, Director of Public Affairs,
Utah State Prison; GERALD
DEARING, Physicians Assistant, Utah
State Prison; STEVEN TURLEY,
Warden, Utah State Prison; ART
ADCOCK, Registered Nurse, Utah
State Prison; BILLIE CASPER,
Grievance Coordinator, Utah State
Prison; TOM ANDERSON, Grievance
Coordinator, Utah State Prison; FNU
JENSEN, Officer, Utah State Prison
Infirmary; FNU SHEBELSKE,
Officer, Utah State Prison Infirmary;
CARMEN LNU,

      Defendants.

No. 10-4177
(D.C. No. 2:07-CV-00911-DB)
(D. Utah)

## ORDER AND JUDGMENT[*]

Before **LUCERO**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

In his 42 U.S.C. § 1983 complaint, Karl Grant Losee, an inmate at the Utah State Prison Utah appearing pro se, claimed that three prison doctors violated the Eighth Amendment by improper treatment of his diabetes and potassium imbalance.[1] Following its consideration of a *Martinez* report,[2] the physicians' motion for summary judgment, and Mr. Losee's response, the district court concluded that defendants were not deliberately indifferent to Mr. Losee's medical needs and granted the motion for summary judgment. Mr. Losee appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Mr. Losee's complaint included other causes of actions and named other prison and state officials. After screening the complaint pursuant to 28 U.S.C. § 1915A, the district court dismissed the additional claims and defendants. Mr. Losee has not challenged this screening order.

[2] *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (en banc) (per curiam) (authorizing district courts to order prison officials to investigate civil-rights complaints and prepare a report for submission to the court).

I.

Before Mr. Losee began his term of imprisonment at the Utah State Prison, his sentencing judge contacted Dr. Garden, the Administrative and Clinical Director for Health Services in the Utah Department of Corrections, to explain that Mr. Losee had difficult-to-manage diabetes and had been receiving both a long-acting and an ultra-fast-acting insulin. Dr. Tubbs, a prison physician at the prison, conducted Mr. Losee's initial medical screening in April 2007 and prescribed regular insulin as a temporary diabetes treatment pending further evaluation.

Dr. Roberts, also employed by the prison, became Mr. Losee's primary physician. Within weeks after Mr. Losee's admission, Dr. Roberts ordered a complete blood test and put in a request for an examination at the University of Utah Medical Center (UMC). After the June examination, UMC advised reinstating the more complex insulin regimen. To carry out this recommendation, Mr. Losee's blood sugar needed to be checked before each meal and at bedtime. The ultra-fast-acting insulin should be administered just before or immediately after each meal.

As the district court put it, it then "fell to Defendants to determine how best to implement the recommendation[] in the prison setting." R. at 723. It was difficult to fit the procedure into the prison's general-population medication system, which provided for only a morning and evening pill line. Dr. Roberts and

other medical personnel conceived of various arrangements to accommodate Mr. Losee's insulin needs, such as admitting him to the infirmary. Mr. Losee opposed a transfer to the infirmary because he was happy with his current housing situation. He proposed other ideas and began pursuing grievances concerning his medical care. Although Mr. Losee had been counseled about the need for a proper diet, his commissary records showed that he was purchasing inappropriate junk food.

By August, a non-ideal solution was reached: Mr. Losee was to be given a medical clearance pass to the infirmary for a blood-sugar check and medication three times a day, within thirty minutes of each meal. Security concerns prevented his receiving a night-time blood-sugar check at the infirmary. After implementation of this system, Mr. Losee's blood sugar continued to fluctuate and his renal function deteriorated. Concerned about Mr. Losee's health, medical staff proposed other measures to reach full compliance with the UMC recommendation, such as transferring Mr. Losee to the county jail or admitting him to the infirmary. Mr. Losee again refused the proffered options. He continued with the three-times-a-day infirmary plan, enhanced with a bedtime blood-sugar check.

A team of health-care providers, however, concluded that Mr. Losee should be housed in a special-needs area in the Olympus housing unit, where his

blood-sugar level and medication needs could be monitored four times a day. Although Mr. Losee was displeased with this proposal, he was transferred to Olympus in September. Claiming that being housed with mentally ill inmates caused him severe stress, he asserted that the transfer was in retaliation for filing grievances. After a period when Mr. Losee's diabetes was under better control than it had been before, he was allowed to move back to general-population housing after signing an "Against Medical Advice" form. Mr. Losee was given his own glucometer to test his blood sugar before each meal and at bedtime. Arrangements were made for him to receive insulin in accordance with the UMC recommendations.

In addition to treatment for diabetes, Mr. Losee also received medical care for elevated potassium levels. Shortly after intake, Dr. Roberts had Mr. Losee's potassium levels tested. In response to the test results, Dr. Roberts put Mr. Losee on a low-potassium diet, ordered an electrocardiogram, and referred him to a specialist. The specialist confirmed that the diet was appropriate and added a medication to lower potassium levels.

## II.

In its September 30, 2010 Memorandum Decision and Order, the district court outlined Mr. Losee's medical treatment and concluded that none of the physicians had displayed deliberate indifference to his medical needs. The court

entered summary judgment, determining that Mr. Losee's claim was unsupported by evidence. "This court reviews an award of summary judgment *de novo*, viewing the record in the light most favorable to the non-moving party. Moreover, this court construes a pro se party's pleadings liberally." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir.) (quotation omitted), *cert. denied*, 131 S. Ct. 469 (2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

Based on our review of the record, the parties' appellate filings, and the relevant legal authority, we affirm for substantially the same reasons set forth by the district court. Without question, the record demonstrates that defendants adequately addressed Mr. Losee's medical needs. Even "[a] negligent failure to provide adequate medical care, [and] even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999). Likewise, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Id.* Mr. Losee has not come forward with evidence of deliberately indifferent delay in his treatment or the substantial harm required to state such a claim. *See Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (holding that a delay in medical care can only constitute an Eighth Amendment claim if there has been a deliberate indifference that results in substantial harm).

The judgment of the district court is AFFIRMED.

Entered for the Court


Stephen H. Anderson
Circuit Judge