F I L E D
United States Court of Appeals
Tenth Circuit

DEC 30 2003

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CEDRIC BERNARD JACKSON,

Plaintiff - Appellant,

v.

BETHZAIDA SERRANO CLOWERS,
M.D.,

Defendant - Appellee.

No. 03-1260
(D. Ct. No. 01-MK-1849 (OES))
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **McKAY**, and **McCONNELL**, Circuit
Judges.

After examining the briefs and the appellate record, this three-judge panel

has determined unanimously that oral argument would not be of material

assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th

Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff-Appellant Cedric Bernard Jackson, a federal prisoner, brought suit

under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

U.S. 388 (1971), against Defendant-Appellee Bethzaida Serrano Clowers, M.D., alleging that Dr. Clowers violated his Eighth Amendment rights by showing deliberate indifference to his skin rash. The district court granted Dr. Clowers's motion for summary judgment based on qualified immunity. We take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. Background

While incarcerated in the United States Penitentiary in Florence, Colorado, Mr. Jackson acquired a skin condition that caused a rash and extreme itchiness. The following chronology of his condition's treatment forms the basis for Mr. Jackson's claim.

On December 11, 2000, Mr. Jackson notified a physician's assistant of his condition. The physician's assistant examined him that day but prescribed no treatment. Mr. Jackson then wrote to Dr. Clowers on December 17 and 18, 2000, seeking her evaluation of his condition. Dr. Clowers examined Mr. Jackson on December 19, 2000, and prescribed a treatment.

Less than a week later, Mr. Jackson wrote Dr. Clowers and the physician's assistant, informing them that the itchiness had not subsided. After referring Mr. Jackson to the chronic care clinic, Dr. Clowers again examined him on January 4, 2001. She recommended a new course of treatment involving special soap and lotion, available from the commissary, and the use of clean towels every other

day. On February 4, 2001, Mr. Jackson wrote to Dr. Clowers stating that his commissary restriction prevented him from obtaining the special lotion and soap that she prescribed. Dr. Clowers replied that she had no control over his access to the commissary, recommending that he bring the issue to the attention of his case manager.

About two weeks later, Mr. Jackson sought to report for sick call. When a staff member looked into his cell to process his request, Mr. Jackson began masturbating in front of her. The sick call was terminated. During the disciplinary proceedings following this incident, Mr. Jackson did not offer an explanation for his conduct. Rather, he offered the hearing officer a series of expletives.

On March 29, 2001, Dr. Clowers attempted to examine Mr. Jackson for his skin condition once again. Mr. Jackson's argumentative behavior prevented Dr. Clowers from completing the exam. Approximately a week later, Dr. Clowers again examined Mr. Jackson for his skin condition; diagnosed it as atopic dermatitis; and prescribed the same soap, lotion, and towel treatment. When Mr. Jackson complained the following week of his difficulty in purchasing the soap and lotion from the commissary, penitentiary staff notified him that he could obtain these items from the commissary.

In early May 2001, penitentiary staff placed Mr. Jackson in the secured unit

of the penitentiary. This unit lacks the self-adjusting water temperature controls in the showers that exist in the penitentiary's general housing units. On May 17, 2001, Mr. Jackson complained that the water temperature of these showers aggravated his skin condition. Penitentiary officials took no action, however, because they released Mr. Jackson from the secured unit on the same day.

Between January 16 and July 27, 2001, Mr. Jackson sought medical attention no fewer than six times for a variety of ailments unrelated to his skin rash. In these instances, he never complained about or even referenced his skin condition.

On September 17, 2001, Dr. Clowers examined Mr. Jackson for his skin condition for the final time. Dr. Clowers prescribed a pharmaceutical treatment for Mr. Jackson and provided him with literature regarding his condition.

Mr. Jackson then filed this pro se suit under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that Dr. Clowers showed deliberate indifference to his skin condition in violation of the Eighth Amendment to the Federal Constitution. Mr. Jackson moved for summary judgment. Dr. Clowers, arguing that she was entitled to qualified immunity, filed a cross-motion for summary judgment. Following a recommendation by the magistrate judge, the district court, upon de novo review, granted Dr. Clowers's summary judgment motion and denied Mr. Jackson's motion. This appeal

followed.

## II. Discussion

A.    Standard of Review

We review the district court's grant of summary judgment de novo, applying the same legal standard as the district court. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the evidence, and draw reasonable inferences therefrom, in the light most favorable to the nonmoving party. *Byers*, 150 F.3d at 1274. Finally, because Mr. Jackson proceeds pro se, we liberally construe his briefs and pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).

B.    Qualified Immunity

Dr. Clowers based her motion for summary judgment on qualified immunity. Qualified immunity provides a defense against a *Bivens* action. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether a plaintiff can overcome a qualified immunity defense, we first "determine whether the plaintiff has asserted a violation of a constitutional or statutory right, and then we decide whether that right was clearly established such that a reasonable person in the defendant's position would have known that [his] conduct violated that right." *Garramone v. Romo*, 94 F.3d 1446, 1449 (10th Cir. 1996). Order is important; we must decide first whether the plaintiff has alleged a constitutional violation, and only then do we proceed to determine whether the law was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* We find that they do not.

Prison officials violate a prisoner's Eighth Amendment rights "when they are deliberately indifferent to the serious medical needs of the prisoners in their custody." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). Deliberate indifference claims "involve both an objective and a subjective component, such that we must determine both whether the deprivation is sufficiently serious and whether the government official acted with a sufficiently culpable state of mind." *Id.* (internal quotations omitted).

A mere "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999). Further, a prisoner's disagreement with a diagnosis or a prescribed course of treatment does not constitute an Eighth Amendment violation. *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992). The conduct need not occur, however, "for the very purpose of causing harm or with knowledge that harm will result" to satisfy the deliberate indifference standard. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

Based on the chronology of his skin treatments outlined above, Mr. Jackson argues that Dr. Clowers was deliberately indifferent to his medical needs. Although Mr. Jackson concedes that he received medical treatment, he argues that the infrequency and ineffectiveness of Dr. Clowers's treatments constitute deliberate indifference. We disagree.

Even viewed in the light most favorable to Mr. Jackson, the record does not support the conclusion that Mr. Jackson suffered a sufficiently serious deprivation of medical care. *See Oxendine*, 241 F.3d at 1276. Over the course of ten months, as outlined above, Mr. Jackson made numerous requests for medical attention. Excepting times when Mr. Jackson's own behavior stifled their efforts, Dr. Clowers and the penitentiary medical staff swiftly responded with good-faith

efforts to treat his ailments. Even if the allegedly inadequate treatments caused Mr. Jackson's skin condition to recur persistently, these facts would, at best, support a medical malpractice claim. Such a claim cannot be brought as a *Bivens* action. *Perkins*, 165 F.3d at 811. Therefore, we hold that the record in this case, viewed in the light most favorable to Mr. Jackson, does not support an Eighth Amendment violation.

### III. Conclusion

For the foregoing reasons, we AFFIRM the ruling of the district court. Additionally, we GRANT Mr. Jackson's motion to pay this Court's filing fee in partial payments and remind Mr. Jackson that he must continue to make partial payments until the entire filing fee has been paid.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge