**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 11 2004**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

RANDALL L. DITTMEYER,

    Plaintiff-Appellant,

v.

JOHN WHETSEL, in his official and
individual capacity; RUSSELL DEER,
Major, in his official and individual
capacity,

    Defendants-Appellees,

OKLAHOMA COUNTY DETENTION
CENTER; CHARLES F. HARVEY,
M.D.; JOHN DOE, Dentist; JOHN
HEITMEYER, Lt.; VERNON,
Sergeant; CLIFF URANGA, Captain;
WILSON, Detention Officer,

    Defendants.

No. 03-6177
(W.D. Okla.)
(D.Ct. No. 00-CV-1449-C)

---

ORDER AND JUDGMENT[*]

---

Before **TACHA**, Chief Circuit Judge, **PORFILIO** and **BRORBY**, Senior Circuit
Judges.

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Randall L. Dittmeyer, an inmate at a state correctional facility in Oklahoma represented by counsel, appeals the district court's summary judgment dismissal of his amended complaint, filed pursuant to 42 U.S.C. § 1983. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

I. Factual Background

The following summary of facts is viewed in the light most favorable to Mr. Dittmeyer, and either supported by the record or undisputed. On August 19, 1999, following his arrest on methamphetamine-related charges, Mr. Dittmeyer became a pretrial detainee in the Oklahoma County Detention Center, where officials placed him in a pod with several African-American inmates. One month after his arrival at the facility, three African-American gang inmates attacked Mr. Dittmeyer, a member of a white-only gang, because he failed to pay them for his use of the public telephone. Although a detention officer was on duty at the time,

Mr. Dittmeyer did not think the officer saw the altercation, and Mr. Dittmeyer did not report it to him.

Mr. Dittmeyer suffered an injured jaw and the loss, breakage and loosening of several teeth as a result of the altercation. Out of fear of retribution from those and other inmates, he did not report the incident to jail officials, but did call his mother and told her about it. His mother contacted an official at the facility, and on the same evening as the altercation, detention officials took him to a nurse who only provided him an ice pack for his jaw.

Facility records establish that on October 5, 1999, approximately two days after the altercation and repeated requests from Mr. Dittmeyer's mother and her attorney, officials again took Mr. Dittmeyer to a nurse. She examined him, noted several missing, broken or loose teeth, provided pain medication, and set up a doctor's appointment for the next day. The next day, approximately three days after the altercation, both a doctor and a dentist separately saw Mr. Dittmeyer. Although the dentist took x-rays, neither the dentist nor the doctor performed work on his teeth or jaw – instead, he received thirty days pain medication and advice that future dental work would be needed.

Immediately thereafter, detention officials placed Mr. Dittmeyer in solitary confinement for a few days; shortly thereafter, they released him and then placed him back in solitary confinement for a more extended period of time. Officials advised Mr. Dittmeyer and his mother they placed him in solitary confinement to protect him from other inmates, either as a result of the altercation or because he might be confused with another individual who killed a girl named Dittmeyer. Mr. Dittmeyer received no hearing regarding his placement in solitary confinement. However, as a result of his isolation, he did not experience any further problems with inmates, including the ones who injured his jaw. The solitary confinement cell in which officials initially placed Mr. Dittmeyer was moldy, filthy, and contained feces on the toilet, floor and walls. At some point, after complaints by Mr. Dittmeyer and his mother, officials provided him with cleaning products.

For the first few months after his altercation, facility records show Mr. Dittmeyer filed numerous health service requests, asking for dental work and a follow-up on the injury to his jaw. Specifically, on November 8, 1999, Mr. Dittmeyer filed a request for a follow-up on his jaw and dental assistance, stating some of his teeth needed removal because they were causing "much pain," and requesting "something for the pain." A facility dentist saw him two days later on

November 10, 1999, and removed two loose teeth.

On December 10, 1999, Mr. Dittmeyer again requested a follow-up on his jaw. On February 13, 2000, he filed another health service request, complaining "its [sic] been over '140' days since my busted jaw. I didn't get anything done about it then. I was just told it was busted ... still in a lot of pain. Still have some bleeding from my teeth. Got two teeth out ... but still have two real loose and busted [teeth] causing so much problems, its to [sic] painful to eat." A facility dentist saw him over a week later, on February 22 and 27, 2000, but it is unclear from the record what dental treatment he performed on Mr. Dittmeyer's teeth.[1]

Mr. Dittmeyer, now on parole, never received treatment for his jaw, but states it is now "healed" and no longer causes him pain. However, due to the loss

---

[1] Mr. Dittmeyer's medical records also show that while in detention, he complained about an ulcer condition, which resulted in medical personnel prescribing various ulcer medications and antacids throughout his detainment. They also show he complained about an asthma condition and requested an inhaler, which he ultimately received. He admits he only suffered one severe asthma attack, although he claims he requested but received no treatment during the attack. To the extent Mr. Dittmeyer is appealing the district court's dismissal of these complaints, we conclude the grant of summary judgment was appropriate to Sheriff Whetsel and Deputy Deer for the same reasons as his complaints about his teeth and jaw – namely, nothing in the record establishes they knew about those injuries or failed to act based on such knowledge.

of teeth, he experiences difficulty chewing certain foods, which is painful to his gums.

II.  Procedural Background

Following Mr. Dittmeyer's filing of a *pro se* civil rights complaint, the district court appointed counsel to represent him.  Thereafter, Mr. Dittmeyer filed a First Amended Complaint (complaint), against various detention and health facility officials, claiming violation of his constitutional and civil rights under 42 U.S.C. § 1983, for:  1) withholding or delays in medical treatment for his jaw and teeth; 2) unconstitutional confinement resulting from placement in solitary confinement without a hearing or appeal; 3) failure to properly segregate detainees, resulting in the altercation and injuries to his jaw and teeth; 4) unconstitutional conditions of confinement, relating to overcrowding and unsanitary conditions of his cell while in solitary confinement; and 5) withholding access to a law library.  Based on these claims, Mr. Dittmeyer requested, in part, compensatory and punitive damages.

Following depositions and other discovery, the named defendants, consisting of both detention officials and health providers, filed motions for summary judgment.  Prior to disposition on the summary judgment motions, and

at Mr. Dittmeyer's request, the district court dismissed both the doctor and dentist who initially examined his jaw, and various prison officials, who Mr. Dittmeyer claimed his mother contacted, or who may have otherwise known about his teeth and jaw or repeated requests for treatment, but failed to act.

III.  District Court's Summary Judgment Decision

Shortly thereafter, the district court issued an Order granting the summary judgment motions of the remaining defendants – Sheriff John Whetsel and Deputy Sheriff Russell Deer.  In so doing, the district court determined no genuine issues of fact existed as to Deputy Deer's liability under § 1983.  Specifically, the district court determined that, other than stating Deputy Deer was in charge of all administrative operations at the facility, Mr. Dittmeyer failed to present "a scintilla of evidence that would establish [Deputy] Deer was deliberately indifferent to his health and safety."

As to Sheriff Whetsel, the district court issued a more thorough analysis of the claims against him both individually and in his official capacity, and the reasons for granting summary judgment in his favor.  First, the district court briefly concluded that, while a delay occurred in the medical treatment to Mr. Dittmeyer's injured jaw, it could not find facts tantamount to the "deliberate

indifference" and the "unnecessary and wanton infliction of pain" standards pronounced by the United States Supreme Court in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), and in *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

In addressing Mr. Dittmeyer's other claims, the district court first concluded he failed to show Sheriff Whetsel knew of any claimed denial of law library access or otherwise failed to correct it. As to his allegations about the unsanitary conditions of his cell, the district court noted Mr. Dittmeyer received the cleaning products he requested and that even if the initial condition of his cell violated state jail standards, the conditions merely amounted to "negligence," and therefore, were insufficient to impose § 1983 liability.

Similarly, the district court rejected Mr. Dittmeyer's claims on the dangerous conditions of his confinement. Before rejecting these claims, the district court first determined: 1) the detention facility violated statutorily imposed standards; 2) Sheriff Whetsel knew dangerous conditions prevailed at the facility; and 3) he failed to take reasonable measures to ensure the safety of prisoners within his care. The unsafe conditions cited by the district court included inadequate sight checks, unsecured cell doors, razors in cells, overcrowding, understaffed and unsanitary facilities, and substantial delays in

prisoners receiving medical attention.

Despite these conclusions, the district court determined the conditions of confinement alleged by Mr. Dittmeyer amounted only to "negligence," which under *Daniels v. Williams*, 474 U.S. 327, 328, 332-34 (1986), is insufficient to establish liability under 42 U.S.C. § 1983. In addition, relying on *Verdecia v. Adams*, 327 F.3d 1171 (10th Cir. 2003), the district court reasoned that Sheriff Whetsel's actions did not constitute "deliberate indifference," which requires that his conduct was "'in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow,' or that the conduct 'disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights.'" *Id.* at 1176 (quoting *Berry v. City of Muskogee*, 900 F.2d 1489, 1494 (10th Cir. 1990)). Following this reasoning, the district court determined Mr. Dittmeyer failed to show Sheriff Whetsel subjectively knew of the risk these conditions might pose to him when he was assaulted, or that he was deliberately indifferent to that risk. *Verdecia,* 327 F.3d at 1176.

Similarly, the district court concluded Mr. Dittmeyer failed to show Sheriff Whetsel should have known to segregate him from certain other inmates. The district court pointed out that the only notice of attacks on other inmates consisted

of a letter and affidavit, referring to events prior to Mr. Dittmeyer's attack, after which modifications were immediately undertaken to resolve the problems. As to the issue of qualified immunity, the district court outlined the applicable standards and concluded Sheriff Whetsel did not commit a constitutional violation of an established right.

IV. Issues on Appeal

On appeal, Mr. Dittmeyer raises the following issues:

1) "Whether the Court erred in finding that there was no personal participation by the defendants."

2) "Whether the Court erred in finding that the Defendants were entitled to qualified Immunity on the issues of deliberate indifference to the medical, safety and security needs of the Plaintiff."

3) Whether the Court erred in finding that there was no constitutional violation."

A review of Mr. Dittmeyer's appeal brief establishes he is not appealing the issue previously raised concerning the failure of detention facility officers to hold a hearing on his placement in solitary confinement. Accordingly, this issue is waived and we will not address it on appeal. *See Ward v. Williams*, 240 F.3d

1238, 1241 n.6 (10th Cir. 2001).

V.  Standard of Review and Applicable Law

    As to the remaining issues, we begin our analysis with the standard by which we must review summary judgment dismissal of Mr. Dittmeyer's complaint.  In general, we review a summary judgment order *de novo*, considering the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.  *See Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000).  We may affirm a district court's grant of summary judgment on any grounds supported by the record.  *See Ruiz v. McDonnell*, 299 F.3d 1173, 1182 (10th Cir. 2002), *cert. denied*, 123 S. Ct. 1908 (2003).  Summary judgment is proper only when there are no genuinely disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  *Cooperman*, 214 at 1164 (quoting Fed. R. Civ. P. 56(c)).  In reviewing summary judgment motions, we look at the parties' respective burdens.  With respect to claims of individual liability, Sheriff Whetsel and Deputy Deer, as the movants for summary judgment, bear the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See Craig v. Eberly*, 164 F.3d 490, 493 (10th Cir. 1998); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).  Movants, like the officers here, may meet their burden

simply by pointing out a lack of evidence on the nonmovant's essential claims. *Alder*, 144 F3d. at 671. If they carry this initial burden, Mr. Dittmeyer, as the nonmovant, may not rest solely on his pleadings, but must set forth specific facts in support of his claims, by reference to affidavits, deposition transcripts, or other exhibits incorporated therein. *Id.*

We apply the burdens of the parties differently on claims of qualified immunity. "When a § 1983 defendant raises the defense of qualified immunity on summary judgment, the burden shifts to the plaintiff to show that 1) the official violated a constitutional or statutory right; and 2) the constitutional or statutory right was clearly established when the alleged violation occurred." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).

With these standards in mind, we turn to the constitutional issues raised. It is well established the Eighth Amendment requires prisoners to be provided "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996), (quoting *Estelle*, 429 U.S. at 103). This includes a duty to protect prisoners from violence by other prisoners, *see Verdecia*, 327 F.3d at 1175, and an obligation to provide necessary medical care. *See Estelle*, 429 U.S. at 103.

In order for a plaintiff to succeed on a § 1983 claim in violation of the Eighth Amendment, he must show:  1) the deprivation is "sufficiently serious," and 2) the prison officials acted with "deliberate indifference" to the inmate's health and safety.  *Penrod*, 94 F.3d at 1405-06.  Liability for "deliberate indifference" requires a prison official to: 1) be aware of the facts from which an inference can be drawn that a substantial risk of serious harm exists; and 2) draw such an inference.  *See Verdecia*, 327 F.3d at 1175.  Thus, to survive summary judgment, a prisoner must show the named prison official possessed the requisite personal participation or knowledge, *see Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993), and acted with "deliberate indifference" to his health or safety.  *Penrod*, 94 F.3d at 1405-06.  Although prisoners must receive humane conditions of confinement, mere discomfort or temporary adverse conditions which pose no risk to health and safety do not implicate the Eighth Amendment.  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994).

VI.  <u>Discussion</u>

We have reviewed the parties' pleadings and briefs, the record on appeal, the district court's decision, and considered them in light of the applicable law. We note the district court issued a relatively comprehensive Order granting

summary judgment. Given the thoroughness of the Order, we will not further articulate the facts, applicable law or reasoning applied by the district court in granting the summary judgment, other than to articulate other grounds for granting summary judgment to Sheriff Whetsel and Deputy Deer on the issue of their individual liability, as follow. As to the issue of qualified immunity, we conclude the district court properly granted summary judgment in favor of the defendants for substantially the same reasons articulated in its Order.

A. Denial or Lack of Medical Treatment

Mr. Dittmeyer's injuries to his teeth and jaw, together with numerous delays in medical treatment and the substantial pain he suffered as a result, appear to have been sufficiently serious to warrant a § 1983 claim. However, with respect to the requisite element of "deliberate indifference," we note the district court simply concluded that, even though delay occurred in Mr. Dittmeyer's medical treatment, nothing in the record showed "deliberate indifference" nor "unnecessary and wanton infliction of pain." We limit that general conclusion only to Sheriff Whetsel and Deputy Deer for the reasons articulated hereafter. As a result, we need not determine whether the initial three-day delay in receiving treatment, or subsequent delays following submission of his health requests and declarations of substantial pain, amounted to "deliberate indifference" by others

-14-

as to Mr. Dittmeyer's health and safety.

After a thorough review of the record, it is clear no evidence shows Sheriff Whetsel knew of Mr. Dittmeyer's injuries; Mr. Dittmeyer's or his mother's requests for treatment; or the delays or omissions in providing him treatment. As a result, Mr. Dittmeyer fails to show Sheriff Whetsel possessed the requisite personal knowledge or acted with "deliberate indifference" to his health and safety, as required, to succeed on his § 1983 claim.[2] *See Penrod*, 94 F.3d at 1405.

As to Deputy Deer, we are inclined to further elaborate on the district court's ruling Mr. Dittmeyer failed to present "a scintilla of evidence that would establish [Deputy] Deer was deliberately indifferent to his health and safety." The record establishes Mr. Dittmeyer's mother, Mrs. Crabtree, contacted Deputy Deer approximately one week after the altercation. At that point, Mr. Dittmeyer had already been seen by two nurses, a doctor, and a physician; pain medication had been prescribed; and an x-ray taken.

---

[2] In support of the district court's grant of summary judgment, Sheriff Whetsel's and Deputy Deer's counsel relies on the fact Mr. Dittmeyer admitted that, prior to the altercation, he failed to go to a dentist for several years and had already begun to experience gum disease. It is unclear why this would mitigate the seriousness of the injuries received as a result of the altercation, or the delays received in treatment for either those injuries alone or in combination with his prior poor dental condition.

-15-

Even viewing the evidence in the light most favorable to Mr. Dittmeyer, nothing in the record establishes Mrs. Crabtree talked to Deputy Deer about a lack of medical treatment to her son. Instead, she recounted to Deputy Deer what happened to her son, and asked if he knew the incident happened and if a guard was on duty when it did happen. According to her, Deputy Deer said they couldn't find anyone aware of the incident happening and that he "would check on the situation." She also talked to Deputy Deer about the reasons they placed her son in isolation, and he assured her they would "do something." At one point, she talked to an official about why her son was in isolation and not allowed to shower or call home, but she never identified Deputy Deer as the individual with whom she talked.

Like his mother, Mr. Dittmeyer never talked to Deputy Deer about medical treatment related to the 1999 altercation. Instead, he spoke to him only about getting out of isolation and back into the general population. Based on the scant evidence presented, Mr. Dittmeyer fails to show Deputy Deer knew of facts from which an inference could be drawn that a substantial risk of serious harm existed because of a delay or lack of medical treatment, or that he had reason to draw such an inference. *See Verdecia*, 327 F.3d at 1175.

B.  Dangerous Conditions of Confinement

With respect to Mr. Dittmeyer's confinement, the district court concluded Sheriff Whetsel knew dangerous conditions prevailed at the facility.  Even if such conditions did exist, we note Mr. Dittmeyer has not shown how the injuries he sustained in an altercation while waiting for the public phone are in anyway related to those conditions, which the district court found included inadequate sight checks, unsecured cell doors,[3] razors left in cells, or understaffed facilities.  Mr. Dittmeyer has not shown that either Sheriff Whetsel or Deputy Deer drew an inference between such unsafe conditions and his assault at the pay phone, which would lead them to anticipate the assault or an unsafe condition.  The only possible scenario providing an unsafe condition related to the altercation might be prevalent understaffing of the facility.  However, Mr. Dittmeyer acknowledged that, at the time of the assault, a detention officer was on duty, although he did not see the assault and Mr. Dittmeyer did not report it to him.  Thus, Mr. Dittmeyer has not shown how understaffing caused the injuries he received, nor that either Sheriff Whetsel or Deputy Deer drew an inference between understaffing of the facility and Mr. Dittmeyer's subsequent assault and injury while at the pay phone where an officer was on duty.  For these reasons, the district court properly

_____

[3]  A review of the record establishes Sheriff Whetsel in fact took measures, prior to the altercation at issue, to fix the locks on unsecured cell doors.

granted summary judgment in favor of these officials on the issue of dangerous conditions of confinement.

C. <u>Unsanitary Conditions of Confinement</u>

As to Mr. Dittmeyer's claims concerning overcrowding and the unsanitary conditions, the district court determined Sheriff Whetsel knew these conditions prevailed at the facility, but that Mr. Dittmeyer failed to present evidence supporting an inference that Sheriff Whetsel actually knew about a substantial risk of serious harm to Mr. Dittmeyer's safety. Thus, he determined no deliberate indifference occurred.[4] On appeal, Mr. Dittmeyer argues the prevalence of these and other ongoing conditions put officials on notice to the extent "they can be said to have personally participated ... by their failure to redress" them.

While the crux of the district court's ruling and Mr. Dittmeyer's arguments rest on the issue of "deliberate indifference," we note Mr. Dittmeyer fails to establish the other element needed to succeed on his claim – a "sufficiently

---

[4] Deputy Deer testified he never violated any of Mr. Dittmeyer's rights or his conduct was in anyway "deliberately indifferent" in failing to act. On appeal, Mr. Dittmeyer fails to point to any evidence that establishes Deputy Deer knew of the unsanitary conditions or overcrowding. Therefore, he fails to meet his burden of establishing Deputy Deer acted with deliberate indifference.

serious" deprivation to warrant a violation of the Eighth Amendment. *See Penrod*, 94 F.3d at 1405-06. For instance, even if overcrowding in the facility existed, we note Mr. Dittmeyer does not show how overcrowding injured him, especially considering he spent at least 166 days of his detention in solitary confinement. In addition, while in the general prison population, Mr. Dittmeyer describes only a situation where two of the four cell mates had to sleep on mats on the floor, and admits he himself experienced no physical injury due to the overcrowding or sleeping arrangements. As previously stated, mere discomfort which poses no risk to health and safety does not implicate the Eighth Amendment. *See Hudson*, 503 U.S. at 9; *Whitnack*, 16 F.3d at 958.

Similarly, nothing in the record establishes the initial unsanitary condition of his cell resulted in any actual injury, *see Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 807 & n.6 (10th Cir. 1999), or that the unsanitary conditions existed for a substantial time before he received the cleaning products he requested. In fact, Mr. Dittmeyer presents no evidence to show the length of this deprivation for the purpose of establishing it amounted to an Eighth Amendment violation. Thus, Mr. Dittmeyer fails to show overcrowding and unsanitary conditions were so severe they posed a serious health risk or that those conditions constituted anything more than a brief period of minor discomfort. *See Hudson*, 503 U.S. at 9; *see also*

-19-

*Whitnack*, 16 F.3d at 958 (holding that unsanitary conditions, "such as a filthy cell, may be tolerable for a few days and intolerably cruel for weeks or months" (quotation marks and citations omitted).) For these reasons, the district court properly dismissed Mr. Dittmeyer's Eighth Amendment claims relating to overcrowding and the unsanitary conditions of his cell.

D.  Segregation of Prisoners

Finally, with respect to the alleged failure of Sheriff Whetsel and Deputy Deer to segregate Mr. Dittmeyer from certain other inmates before they attacked him, Mr. Dittmeyer claims officials knowingly placed him in a population of African-Americans, gang members, and convicted felons. The district court found Sheriff Whetsel knew of a letter and affidavit concerning the failure of prison officials to segregate certain inmates, but that modifications occurred prior to Mr. Dittmeyer's altercation. We note the affidavit on which the district court apparently relied is dated January 8, 2001 – over a year after the altercation Mr. Dittmeyer experienced with the three African-American inmates – and therefore, does not establish Sheriff Whetsel knew about the affidavit or the circumstances described therein. In addition, the letter at issue describes a problem with the segregation of a prisoner who officials placed in the same cell as a prisoner he was scheduled to testify against. Neither the affidavit nor the letter describes

situations in which different gang members were placed together in the same pod, or where problems arose from placing prisoners of different races in the same pod. Similarly, neither shows a prior problem existed with placing "convicted felons" in the same pods as "detainees" like Mr. Dittmeyer.

While Mr. Dittmeyer continues on appeal to claim officials knowingly placed him in a population of African-Americans, gang members, and convicted felons, he fails to direct us to any evidence in the record which shows these types of segregation problems existed or that the sheriff or his deputy knew they existed or were prevalent. In carrying his burden to show the district court erred in granting summary judgment to the officials, Mr. Dittmeyer has the burden of providing us the essential record references, and this court will not sift through the record to find such references. *See Mile High Indus. v. Cohen*, 222 F.3d 845, 853-54 (10th Cir. 2000). Consequently, Mr. Dittmeyer fails to show either Sheriff Whetsel or Deputy Deer knew: 1) problems existed with placement of inmates of different gangs, race, or detention status together in the same pod, or 2) Mr. Dittmeyer belonged to a whites-only gang or was otherwise unsafe. Thus, Mr. Dittmeyer fails to show either officer possessed knowledge of facts from which they could make an inference that placing Mr. Dittmeyer in the same pod as the three African-American inmates would result in substantial safety concerns or

injury.

Equally important is the fact Mr. Dittmeyer believes the attack resulted primarily because he refused to pay the three inmates for use of the public phone, and not because of his or their gang, race or detention status. Nothing in the record shows Sheriff Whetsel or Deputy Deer knew these individuals were demanding money for use of the public phone, or that they otherwise drew an inference that these individuals would injure Mr. Dittmeyer while he waited to use the public phone.

VII. Conclusion

Accordingly, for substantially the same reasons articulated in the district court's May 20, 2003 Order, and further articulated herein, we hold the district court properly granted summary judgment in favor of Sheriff Whetsel and Deputy Deer and dismissed Mr. Dittmeyer's amended complaint. For these reasons, we AFFIRM the district court's Order and DISMISS Mr. Dittmeyer's appeal.

Entered by the Court:

WADE BRORBY
United States Circuit Judge

-22-