**Earl L. QUINT, Plaintiff,**

v.

**Mike COX, Defendant.**

**No. 03–3227–JWL.**

United States District Court,
D. Kansas.

Dec. 13, 2004.

Earl Leon Quint, Hutchinson, KS, pro se.

Wendell F. Cowan, Jr., Chelsi K. Hayden, Shook, Hardy & Bacon L.L.P., Overland Park, KS, for Defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff Earl L. Quint, appearing pro se, filed suit against defendant Mike Cox who is the sheriff of Meade County, Kansas.[1] Plaintiff alleges that he suffered lithium toxicity while he was incarcerated in the Meade County jail. He seeks relief under 42 U.S.C. § 1983, contending that defendant violated his constitutional rights by denying him medical care and by failing to have a medical nurse or trained person on duty to dispense medications. The matter is presently before the court on defendant's motion for summary judgment (doc. 35). For the reasons explained below, the court will grant defendant's motion in its entirety because plaintiff has failed to raise a genuine issue of material fact that defendant possessed the subjective awareness, either personally or insofar as he is in charge of the Meade County jail, of a sufficiently serious risk of harm to plaintiff that is necessary to rise to the level of constituting deliberate indifference to plaintiff's medical needs.

## STATEMENT OF MATERIAL FACTS

The court's recitation of the facts is complicated by plaintiff's failure to follow

---

1. Plaintiff's complaint does not specify whether he is suing Sheriff Cox in his official or individual capacity, so the court will address plaintiff's claim against him in terms of both capacities.

the Federal Rules of Civil Procedure and this court's local rules in responding to defendant's motion for summary judgment. In his response, plaintiff merely presents argument regarding his claims against defendant. He did not support his response with references to depositions, affidavits, or any other competent Rule 56(e) evidence. While plaintiff did attach a number of exhibits to his response brief, those exhibits are simply interlineated (i.e., less complete) versions of documents that are already a part of the summary judgment record. Nonetheless, plaintiff is a pro se litigant and the court is of course mindful that "pro se litigants should not succumb to summary judgment merely because they fail to comply with technical requirements involved in defending such a motion." *Boyd v. Unified Gov't*, No. 98–2439–KHV, 1999 WL 1467229, at *2 (D.Kan. Nov. 10, 1999), *aff'd*, 3 Fed.Appx. 731, 2001 WL 30430, at *1 (10th Cir.2001). Thus, the court has diligently reviewed plaintiff's briefs, the exhibits that he submitted, and the entire summary judgment record to determine whether genuine issues of material fact exist.[2]

The court's recitation of the facts is also informed by the factual allegations in plaintiff's verified complaint. *See Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (pro se prisoner's verified complaint may be treated as an affidavit and used as evidence at the summary judgment stage). Those factual allegations are consistent with defendant's factual allegations, but are vague concerning the timing of specific events. Nonetheless, in plaintiff's response to defendant's motion for summary judgment, plaintiff's argument recites the dates of relevant events consistently with how those dates are presented in defendant's factual allegations. Thus, given the fact that plaintiff has not specifically controverted the dates recited in defendant's factual allegations and in fact presents argument that agrees with those dates, *see* D. Kan. Rule 56.1(a) ("All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."), the court will adopt the factual allegations in plaintiff's complaint as supplemented with the timing of events as recited in defendant's factual allegations.

After a careful review of the record, the court finds that it must deem admitted all of defendant's facts for purposes of resolving defendant's motion for summary judgment, as the court can find no evidence that those facts are controverted in any material respect.

When new inmates arrive at the Meade County jail, jail officials follow a standard booking procedure which includes an inquiry into the inmate's medical history. This inquiry involves ascertaining whether the inmate has mental or emotional problems, is receiving mental or emotional treatment, and/or has any other medical needs. Meade County officials specifically ask each inmate whether he or she is currently taking any medication, and the jail administers medications pursuant to doctors' orders. Unless specified differently by a doctor, medications are distributed to inmates by the jailer on duty at breakfast, lunch, dinner, and before 10:00 p.m. Requests for medical care are handled at the discretion of the jailer. Depending on the alleged illness and the gravity of the situation, the jailer determines whether the requested care is needed. Inmates are taken to the clinic or hospital as directed by medical professionals.

---

**2.** For this same reason, defendant's motion to strike (doc. 45) plaintiff's response to defendant's motion for summary judgment is denied.

On May 28, 2002, plaintiff was arrested and booked into the Meade County jail. At that time, he was subjected to the jail's standard booking procedures. He stated that he suffered from bipolar disorder and was currently taking Effexor twice daily. On that same day, the jail had his prescription filled for lithium and Effexor.

On May 29, 2002, Carol Kummer, a counselor from Southwest Guidance Center, called the jail. The jailer told Ms. Kummer that plaintiff was shaky and Ms. Kummer suggested that it might be a good idea to have plaintiff's lithium level checked. That same day, the jailer took plaintiff to the Meade District Hospital to have his blood drawn for a lithium check and then took him to the Southwest Guidance Center clinic to visit with Ms. Kummer. The jail received the blood tests results back on May 31, 2002, and those results indicated that plaintiff's lithium level was high at 1.8 mmol/L,[3] which plaintiff characterizes as being very high and, in fact, in the "danger zone." The Meade Medical Clinic ordered his lithium to be withheld for three doses and lowered the dosage from 900 milligrams twice a day to 600 milligrams twice a day. On June 4, 2002, the jail once again had plaintiff's lithium level checked, and this test showed that his lithium level was at 0.6 mmol/L.

On June 5, 2002, Ms. Kummer went to visit plaintiff for a routine visit at the jail. Upon seeing plaintiff, Ms. Kummer feared that he was suffering from lithium toxicity. She consulted with plaintiff's physician and informed the jail that plaintiff should be taken to the hospital. Plaintiff was then taken by ambulance to the Southwest Medical Center hospital in Liberal, Kansas. He was admitted to the hospital and placed in the intensive care unit. He exhibited signs of lithium toxicity and his lithium level was 0.7 mmol/L. He was diagnosed with distonia as a result of lithi-

um toxicity, lithium causing adverse effects in therapeutic use, and hyponatremia. He was treated with intravenous saline and medical professionals changed his medication, taking him off lithium. He was released from the hospital on June 8, 2002, and returned to the Meade County jail.

On June 15, 2002, plaintiff was having hallucinations and shaking, and reported seeing monsters and bugs. The jail referred the matter to Southwest Guidance Center. An individual from Southwest Guidance Center examined plaintiff on that day, and recommended that plaintiff be voluntarily admitted to Larned State Hospital. Plaintiff was admitted to Larned State Hospital that same day. While at Larned, medical professionals adjusted his medication again, putting him back on lithium. Plaintiff was discharged from the hospital on June 20, 2002, and returned to the Meade County jail. At that time, he was ordered to take 300 milligrams of lithium three times daily.

On June 27, 2002, plaintiff's lithium level was checked once again and it was 0.9 mmol/L.

It is undisputed that the jail had all of plaintiff's prescriptions filled while he was incarcerated, that he received his medication in accordance with the doctors' prescribed instructions, that he received his prescribed medication from the jailer on duty at approximately 8:00 a.m. and 8:00 p.m. each day, that the jail followed the orders of all of plaintiff's healthcare providers, and that the jail made sure plaintiff's lithium level was checked either before every third refill or pursuant to his counselors' or doctors' orders. It is also undisputed that Sheriff Cox did not distribute plaintiff's medicine and had no involvement with determining his lithium prescription.

---

**3.** The test results state that the lithium blood serum range should be 0.6 to 1.4 mmol/L.

Based on these facts, plaintiff alleges that Sheriff Cox violated his constitutional rights by: (1) providing him with too much lithium, causing him to suffer lithium toxicity; (2) denying him medical care; and (3) failing to have a medical nurse or trained person on duty to dispense medications. Defendant seeks summary judgment on the grounds that there is no evidence that he personally participated in the alleged violation of plaintiff's constitutional rights.[4]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir.), *cert. denied*, 537 U.S. 816, 123 S.Ct. 84, 154 L.Ed.2d 20 (2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir.2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler*, 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir.2000) (citing *Adler*, 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *see also Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir.2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir.2000) (quoting *Adler*, 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Adams*, 233 F.3d at 1246 (quotation omitted).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every ac-

---

4. Defendant also argues that he is entitled to qualified immunity for his actions. Because plaintiff has failed to raise a genuine issue of material fact that defendant violated his constitutional rights, the court agrees.

tion.'" *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## ANALYSIS

For the reasons explained below, the court finds that defendant is entitled to summary judgment. Plaintiff has failed to raise a genuine issue of material fact that defendant was personally involved in the alleged deprivation of his constitutional rights or that defendant is subject to supervisory liability under § 1983. The evidence, quite simply, does not lend itself to any reasonable inference that defendant was deliberately indifferent to plaintiff's medical needs, either personally or in his supervisory capacity.

The Eighth Amendment prohibits "the unnecessary and wanton infliction of pain [which] constitutes cruel and unusual punishment." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (internal quotation and citations omitted).[5] A prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 102–03, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). " 'Deliberate indifference' involves both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir.2000). The objective component is satisfied if the deprivation is sufficiently serious. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Sealock*, 218 F.3d at 1209. "A medical need is sufficiently serious if it has been diagnosed by a doctor, or if it would be obvious to a layperson that doctor intervention was needed." *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir.2002). The subjective component is satisfied if the official knows of and disregards an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970; *Sealock*, 218 F.3d at 1209. That is, the official must be "aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970; *accord Garrett v. Stratman*, 254 F.3d 946, 949–50 (10th Cir.2001) (quoting *Farmer*).

█ In this case, the objective component (i.e., that the alleged deprivation was sufficiently serious) was arguably satisfied in the sense that the evidence reflects that plaintiff may have been visibly suffering from lithium toxicity during the first few days when he was incarcerated at the Meade County jail. Nonetheless, the subjective component is not satisfied because plaintiff has failed to raise a genuine issue of material fact that Sheriff Cox actually knew of and disregarded a substantial risk of harm to plaintiff's health or safety. No evidence exists that Sheriff Cox was aware that plaintiff was facing a substantial risk of serious harm, that he personally saw plaintiff at any time, or that he had any personal involvement whatsoever with plaintiff's incarceration. In fact, the only evidence in the record indicates to the contrary. The affidavit submitted by Sheriff Cox in support of his motion for summary judgment states that he did not distribute plaintiff's medicine and was not involved with determining plaintiff's lithium prescription. Plaintiff has likewise failed to present any evidence that Sheriff Cox actually drew the inference that plaintiff was facing a substantial risk of harm.

---

**5.** Although pretrial detainees such as plaintiff in this case are protected under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment, *Lopez v. LeMaster*, 172 F.3d 756, 759 n. 2 (10th Cir.1999), in § 1983 cases the court applies an analysis identical to that applied in Eighth Amendment cases, *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir.2002).

*Compare Lolli v. County of Orange,* 351 F.3d 410, 421 (9th Cir.2003) (affirming district court's grant of summary judgment in favor of sheriff where plaintiff failed to introduce evidence that the sheriff knew of the plaintiff's diabetic condition); *Perkins v. Lawson,* 312 F.3d 872, 875 (7th Cir.2002) (affirming district court's grant of summary judgment in favor of sheriff because sheriff could not be held liable for jailers' failure to take the plaintiff's medical condition seriously enough), *with Jacobs v. West Feliciana Sheriff's Dep't,* 228 F.3d 388, 395–97 (5th Cir.2000) (affirming district court's denial of summary judgment where sheriff knew of the plaintiff's suicidal tendencies and nevertheless placed the plaintiff in conditions that he knew to be obviously inadequate).[6]

█ In fact, it is clear from the record that plaintiff is not attempting to proceed under a theory that Sheriff Cox himself, as opposed to jail personnel, was personally involved in the incident. Instead, plaintiff is proceeding against Sheriff Cox under a theory that he should be held liable for the other jail employees' actions simply by virtue of the fact that he is the sheriff in charge of the jail. For example, in document number 39 filed with this court, plaintiff argues:

I feel that Mr. Cox was 100% responsible for inmates in the county jail at that time. . . .

. . . Mr. Cox was in charge of all the workers in the jail that do & will hand out medications.

I do not understand how anyone can say they are not responsible for damages when this person is in their care. . . .

Then, in document number 44, he similarly states that he "suffered medical problems when he was in Meade County Jail (which Mr. Cox is the Sheriff and is responsible)." The court certainly understands the logic of plaintiff's argument, and it would perhaps have some merit in other legal contexts. This case, however, is brought pursuant to § 1983 and, as such, the grounds upon which Sheriff Cox can be held liable are limited.

█ "[U]nder § 1983, a defendant may not be held liable under a theory of respondeat superior." *Ledbetter v. City of Topeka,* 318 F.3d 1183, 1187 (10th Cir. 2003) (internal quotation and citation omitted). Simply demonstrating that the defendant occupied a supervisory position is not sufficient to establish individual liability; the supervisor's personal participation is essential. *Mitchell v. Maynard,* 80 F.3d 1433, 1441 (10th Cir.1996). A supervisor may be held liable in his or her individual capacity under § 1983 for the actions of a subordinate only if the supervisor participated or acquiesced in the constitutional violation of the prisoner. *Meade v. Grubbs,* 841 F.2d 1512, 1527 (10th Cir. 1988). Mere negligent supervision is insufficient to establish liability; rather, liability must be predicated on the supervisor's deliberate indifference. *Green v. Branson,* 108 F.3d 1296, 1302 (10th Cir. 1997); *Langley v. Adams County,* 987 F.2d 1473, 1481 (10th Cir.1993). In order to be guilty of deliberate indifference, the

---

**6.** Aside from Sheriff Cox's lack of personal participation in the incident, the court expresses serious doubts that plaintiff's claim would be able to survive summary judgment against any of the Meade County jail personnel. *Compare Waldrop v. Evans,* 871 F.2d 1030, 1032 (11th Cir.1989) (finding sufficient evidence of deliberate indifference where prison psychiatrist discontinued inmate's lithium medication and did not reinstitute use of lithium despite four outrageous acts of self-mutilation by the plaintiff, who was known to be manic depressive), *with Gentry v. Foti,* No. 99–1936, 2000 WL 235246, at \*3 (E.D.La. Feb. 28, 2000) (finding no constitutional violation where prison officials checked blood lithium level two months later than the doctor had ordered).

supervisor must have known that he or she was creating a substantial risk of bodily harm. *Green,* 108 F.3d at 1302. Thus, an affirmative link must exist between the constitutional deprivation and the supervisor's personal participation, exercise of control or direction, or failure to supervise. *Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1187 (10th Cir.2001); *Worrell v. Henry,* 219 F.3d 1197, 1214 (10th Cir.2000).

In this case, just as plaintiff has failed to establish that Sheriff Cox was personally deliberately indifferent to his serious medical needs, he has likewise failed to establish an affirmative link between defendant's supervisory responsibilities and plaintiff's alleged lithium toxicity. The record reflects that jail employees are required to follow a standard booking procedure that includes inquiring into inmates' medical history, finding out whether inmates are currently taking medication, administering medications to inmates pursuant to doctors' orders, distributing inmates' medications on a routine basis at least four times daily, evaluating inmates' requests for medical care, and taking inmates to the clinic or hospital as directed by medical professionals. It is undisputed that the jail employees at all relevant times dispensed plaintiff's medications as prescribed and repeatedly assisted him with seeking medical help to regulate his medications as soon as they became aware of the potential instability of his lithium levels. This hardly exhibits deliberate indifference by Sheriff Cox in carrying out his supervisory duties to ensure that jail employees make sure that inmates receive medication as needed. In short, plaintiff has failed to meet his burden of establishing any affirmative link between Sheriff Cox's supervisory responsibilities and the alleged deprivation of his constitutional rights by other jail personnel.

Plaintiff also theorizes that Sheriff Cox should be held liable for the jail's failure to have a medical nurse or trained person on duty to dispense medications. Where deliberate indifference is alleged on the basis of a supervisor's failure to train subordinates, the plaintiff must show "a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable." *Meade,* 841 F.2d at 1528. In this case, plaintiff has failed to present any evidence to indicate that the jail's policy of having jailers dispense inmates' medication was so reckless or grossly negligent that future harm was inevitable. There is no evidence that jail personnel ever varied from or neglected to follow plaintiff's prescribed medical treatment, or that they denied any request by plaintiff to see a doctor, or that they unreasonably delayed plaintiff's access to medical care or intentionally interfered with any treatment once it was prescribed. To the contrary, the evidence reflects that jail employees were responsive to plaintiff's medical needs and repeatedly took action within hours of when they were made aware of the seriousness of plaintiff's medical condition. The manner in which the jailers handled plaintiff's needs appears to have been reasonable; they took him to have his blood drawn and have his lithium levels checked, dispensed his medications as prescribed, and took him promptly to seek medical assistance. Given this, the evidence reflects that jail personnel did an adequate job of facilitating the continuity of medical care for plaintiff and were not at all deliberately indifferent to his medical needs. Other than the facts of this case, plaintiff has presented no evidence that the jailers had a history of failing to provide adequate medical care to ill inmates such that the sheriff would have been aware that his practice of having jailers dispense medication was inadequate and would inevitably have resulted in harm

to inmates. In short, plaintiff has failed to raise a genuine issue of material fact that defendant's practice of not having a medical nurse or better trained personnel on staff to dispense medications amounted to deliberate indifference to inmates' serious medical needs. *See, e.g., Dittmeyer v. Whetsel,* 91 Fed.Appx. 111, 2004 WL 249618, at *6 (10th Cir.2004) (affirming district court's grant of summary judgment in favor of sheriff where no evidence showed that the sheriff knew of the plaintiff's injuries, requests for treatment, or delays or omissions in providing him treatment); *Jackson v. Clowers,* 83 Fed.Appx. 990, 2003 WL 23033558, at *3 (10th Cir. 2003) (affirming district court's grant of summary judgment where penitentiary medical staff swiftly responded with good faith efforts to treat prisoner's ailments even if the treatments were inadequate; at best, facts supported a medical malpractice claim).[7]

 To the extent that plaintiff is also asserting a claim against Sheriff Cox in his official capacity, defendant is also entitled to summary judgment. A claim against an individual in his or her official capacity is the same as a claim against the governmental entity. *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Myers v. Oklahoma County Bd. of County Comm'rs,* 151 F.3d 1313, 1316 n. 2 (10th Cir.1998). A governmental entity is liable for the acts of its employees pursuant to § 1983 only if the plaintiff can show: (1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Myers,* 151 F.3d at 1316. The Tenth Circuit has repeatedly emphasized the necessity of the first factor, which is that an underlying constitutional violation by a municipal employee is a necessary predicate to municipal liability. *See Jennings v. City of Stillwater,* 383 F.3d 1199, 1205 n. 1 (10th Cir.2004) ("[A] municipality cannot be liable for constitutional violations unless its officers committed a constitutional violation."); *Trigalet v. City of Tulsa,* 239 F.3d 1150, 1155–56 (10th Cir. 2001) (even if a city's police policies, training, and supervision are unconstitutional, the city cannot be held liable under § 1983 if the officers did not actually commit a constitutional violation); *Myers,* 151 F.3d at 1316 (a municipality cannot be liable under § 1983 for its employees' actions if the employees committed no constitutional violation).

In this case, plaintiff has failed to raise a genuine issue of material fact that any employee of Meade County violated his constitutional rights. Specifically, the only defendant in this case is Sheriff Cox and, as discussed previously, plaintiff has failed to establish that Sheriff Cox in his individual capacity—that is, in his capacity as an employee of Meade County—violated plaintiff's constitutional rights. Because no underlying constitutional violation occurred, then, liability cannot be imposed on Meade County by way of a claim against Sheriff Cox in his official capacity.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion for summary judgment (doc. 35) is granted. The clerk is directed to enter judgment in favor of the defendant. This case is dismissed.

---

7. These two unpublished Tenth Circuit cases are being cited for their persuasive value on a material issue in this case.