FILED
United States Court of Appeals
Tenth Circuit

April 30, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

RANDAL ANKENEY,

Plaintiff–Appellant,

v.

ARISTEDES ZAVARAS, E.D. of
C.D.O.C.; STEVE HARTLEY, Warden
of Fremont; TIM CREANY, Freemont
Doctor; NURSE PRACTIONER
KLENKE, N.P.; NURSE PRACTIONER
HIBBS, N.P.; ANTHONY A.
DECESARO, Grievance Officer, JOHN
DOE, Grievance Officer,

Defendants–Appellees.

No. 12-1050
(D.C. No. 1:09-CV-02085-WJM-MJW)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and
**MATHESON**, Circuit Judge.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Randal Ankeney, a Colorado prisoner proceeding pro se, appeals the district court's dismissal of his civil rights complaint. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

Ankeney was incarcerated from 2003 to 2004 at the Sterling Correctional Facility. During this time, he had several medical examinations related to pain in his left knee. On December 18, 2003, his knee was examined by Dr. Brooks, a Colorado Department of Corrections ("CDOC") general practitioner. Dr. Brooks diagnosed Ankeney as suffering from a "likely medial meniscal tear" as well as the "possibility of ACL tear," and ordered an MRI. Ankeney was also examined by Dr. Pohlman, a CDOC orthopedic surgeon, on May 18, 2004. Dr. Pohlman also diagnosed Ankeney as suffering from a medial meniscus tear, and he ordered a surgical "scope and meniscectomy ASAP." However, because Ankeney was close to his release date from the Sterling facility, the CDOC's insurance provider denied the surgical procedures requested by Dr. Pohlman. Ankeney did not pursue any treatment for his knee between his release from Sterling and his subsequent re-incarceration on different charges at Fremont Correctional Facility in February 2008.

In his intake screening in 2008, Ankeney pointed out his earlier meniscus tear diagnosis and surgery recommendation. The intake evaluation noted no mobility limitations. Shortly after re-incarceration, Ankeney reported slipping and aggravating his knee. According to prison records, during the course of several

-2-

subsequent appointments related to his knee, prison medical staff members performed x-rays, diagnosed him with degenerative changes in his left knee, and prescribed pain medication.

Ankeney disputes the results of these knee examinations. He claims that the nurses at his prison served as "gate keepers" for specialized care and that the nurses' treatment was inconsistent with the more serious findings of medical staff members who treated him in 2003 and 2004. Ankeney alleges that the nurses' examinations were cursory and that non-emergency requests for care, such as his, were denied due to budget policy.

After exhausting his administrative remedies, Ankeney filed a § 1983 action in federal district court. He claimed that defendants Zavaras, Hartley, DeCesaro, and Doe were deliberately indifferent because they implemented and/or enforced a plan to deny him medical care. He alleged that the three remaining defendants, Dr. Creany, Nurse Practitioner ("NP") Klenke, and NP Hibbs, were deliberately indifferent because they failed to order an MRI of his knee, failed to refer him to a specialist, and eventually refused to even see or examine him.

The district court dismissed most of Ankeney's charges for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The court concluded that Ankeney had failed to allege personal participation by defendants Zavaras, Hartley, DeCesaro, and Doe. In addition, the court dismissed Ankeney's claim that Dr. Creany, NP Klenke, and NP Hibbs were deliberately indifferent to his knee injury

because they failed to order an MRI or other diagnostic exam and did not refer him to an orthopedic specialist. The court concluded that this claim amounted only to a dispute over his diagnosis. However, the court denied defendants' motion to dismiss Ankeney's claim that Dr. Creany, NP Klenke, and NP Hibbs "eventually refused to even see or examine [him] despite his worsening condition." Finally, in its dismissal order, the district court denied Ankeney's motion for a preliminary injunction.

The parties conducted discovery on the remaining claim that Dr. Creany, NP Klenke, and NP Hibbs "refused to even see or examine" Ankeney. After the close of discovery, the parties filed cross-motions for summary judgment. The district court granted defendants' motion for summary judgment and denied Ankeney's motion, noting that the record demonstrated that Dr. Creany, NP Klenke, and NP Hibbs had provided Ankeney with examinations, x-rays, and pain relief, and that there was no evidence that they refused to see or treat him for his knee complaint.

In the same order, the court also denied Ankeney's motion to reinstate his claim that Dr. Creany, NP Klenke, and NP Hibbs were deliberately indifferent to his knee injury because they failed to order testing or refer him to a specialist. Ankeney claimed that the Sterling medical records of Dr. Brooks and Dr. Pohlman, produced during discovery, supported reinstatement of this claim. But the district court denied his motion, concluding that Ankeney was already aware of the information contained

-4-

in these medical records. In addition, the court denied Ankeney's renewed motion for injunctive relief.

## II

## A

Ankeney first challenges the district court's dismissal of his claim that Dr. Creany, NP Klenke, and NP Hibbs were deliberately indifferent because they failed to order an MRI or other diagnostic exam and did not refer him to an orthopedic specialist. "This court reviews de novo the district court's Fed. R. Civ. P. 12(b)(6) dismissal, accepting as true all of the well-pled factual allegations and asking whether it is plausible that the plaintiff[] [is] entitled to relief." Coll v. First Am. Title Ins. Co., 642 F.3d 876, 886 (10th Cir. 2011) (quotation omitted). Because Ankeney proceeds pro se, we construe his filings liberally. See Martinez v. Garden, 430 F.3d 1302, 1304 (10th Cir. 2005). However, we may not "assume the role of advocate" and make Ankeney's arguments for him. See Yang v. Archuleta, 525 F.3d 925, 927 n.1 (10th Cir. 2008) (quotation omitted).

A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). A "deliberate indifference" claim involves both an objective and a subjective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The objective component is established if the deprivation is "sufficiently serious." Id. (quotation omitted).

The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." Id. at 837.

Ankeney alleged in his amended complaint that Dr. Creany, NP Klenke, and NP Hibbs were deliberately indifferent to his health and safety because they "improperly interfered with an examination and/or treatment ordered or recommended by medical staff." The district court found that these allegations were insufficient to satisfy the subjective prong of a deliberate indifference claim because they only stated Ankeney's difference of opinion with the medical treatment that he received at the Fremont facility. See Fitzgerald v. Corrections Corp. of Am., 403 F.3d 1134, 1143 (10th Cir. 2005) (holding that medical malpractice is not actionable under the Eighth Amendment); Perkins v. Kansas Dep't of Corrections, 165 F.3d 803, 811 (10th Cir. 1999) ("[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation."). We agree.

Ankeney did not allege that Dr. Creany, NP Klenke, and NP Hibbs were deliberately indifferent to his knee injury because they failed to order the treatment previously endorsed by Dr. Brooks and Dr. Pohlman. In fact, in his complaint Ankeney did not allege any facts pertaining to the earlier MRI and surgery recommendations of Dr. Brooks and Dr. Pohlman, stating instead that he was "denied care for [his knee] injury [while incarcerated at Sterling] and was told that he did not need surgery or other treatment." Ankeney's allegation that defendants "improperly

-6-

interfered with an examination and/or treatment ordered or recommended by medical staff" was thus wholly conclusory and not supported by any specific facts detailing prior treatment or examinations. See Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012) ("[I]n examining a complaint under Rule 12(b)(6), we will disregard conclusory statements . . . .").

We therefore agree with the district court that the allegations in Ankeney's amended complaint only stated a difference of opinion with the medical treatment that was provided by Dr. Creany, NP Klenke, and NP Hibbs. As the court correctly noted, such allegations do not constitute an Eighth Amendment violation. See Fitzgerald, 403 F.3d at 1143; Perkins, 165 F.3d at 811. Because Ankeney failed to allege "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), the district court properly dismissed his claim.

**B**

Ankeney also challenges the district court's ruling denying his motion to reinstate his claim that Dr. Creany, NP Klenke, and NP Hibbs were deliberately indifferent for failing to order additional testing or refer him to a specialist.

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims." See also Price v. Philpot, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005). For guidance, the

court may look to the standard used to review a motion made pursuant to Federal Rule of Civil Procedure 59(e). Grounds for granting a motion to reconsider pursuant to Rule 59(e) include: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." Servants of the Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000). We review the reconsideration of an interim ruling for abuse of discretion. See Rimbert v. Eli Lilly & Co., 647 F.3d 1247, 1252 (10th Cir. 2011).

Ankeney claims that the district court should have reinstated his claim because during discovery, his medical file revealed that Dr. Brooks and Dr. Pohlman "[b]oth diagnosed him as having a meniscal tear and possible ACL tear" and ordered "[a]n MRI and a surgical procedure." The district court rejected Ankeney's claim, finding that Ankeney had known of Dr. Brooks and Dr. Pohlman's diagnosis prior to his 2008 re-incarceration, and thus the opinions were not "new evidence" that could form the basis for reinstatement of his claim. Servants of the Paraclete, 204 F.3d at 1012.

We agree that Ankeney had independent knowledge of the recommendations he received from Dr. Brooks and Dr. Pohlman when he filed his amended complaint. Intake evaluations done when Ankeney was re-incarcerated in 2008 show that he knew about Dr. Brooks and Dr. Pohlman's opinions and called them to the attention of the intake medical staff. Furthermore, Ankeney swore in the affidavit he submitted in support of his motion for summary judgment that he "told both Hibbs and Klenke that [he] had been previously diagnosed with a meniscus tear and

-8-

possible ACL tear, and that an MRI and surgery were ordered by CDOC physicians."

Ankeney made a similar claim in his response to defendants' motion for summary

judgment, asserting that he "informed Defendants of his medical history, including

the Sterling diagnosis by Dr. Brooks and Dr. Pohlman, and that his knee had not been

treated."  In addition, Ankeney has not challenged the magistrate judge's finding that

the "intake evaluations done when plaintiff was reincarcerated [in 2008]" show that

"he knew about the prior [CDOC doctors'] opinions and recommendations."

We are particularly concerned that Ankeney is trying to have it both ways on

the question of when Dr. Creany, NP Klenke, and NP Hibbs learned about the

diagnoses and recommendations of Dr. Brooks and Dr. Pohlman.  Ankeney claimed

in his motion for summary judgment that "Defendants were so indifferent to

Ankeney's injury that they were not even aware of the previous diagnosis until they

were questioned at their depositions," and that "Defendants [admitted at their

depositions that they] were unaware of the examinations and diagnosis of

Drs. Brooks and Pohlman," seeking to support his claim that Dr. Creany, NP Klenke,

and NP Hibbs were deliberately indifferent because they allegedly failed to see or

treat him.  Yet he simultaneously claimed that they were deliberately indifferent

because they knew of the prior recommendations but nonetheless refused to

implement them.

Ankeney also argues that the district court abused its discretion in determining

that no manifest injustice justified his motion to reinstate.  We sympathize with

Ankeney's situation, but his troubling pattern of pursuing contradictory allegations counsels against disturbing our deference to the district court's conclusion.

## C

Ankeney next disputes the district court's grant of summary judgment to the defendants on his claim that Dr. Creany, NP Klenke, and NP Hibbs were deliberately indifferent because even as his condition continued, they refused to see or examine him. An order granting a motion for summary judgment is reviewed de novo. Clark v. Haas Group, Inc., 953 F.2d 1235, 1237 (10th Cir. 1992).

Ankeney's prison medical records demonstrate that he was repeatedly seen and treated for his knee concerns. Although he disagrees with the course of treatment, such disagreement is a matter for a malpractice claim, not a constitutional violation. We accordingly agree with the district court's grant of summary judgment.

## D

Ankeney also alleges that the district court erred in dismissing his claims against defendants Zavaras, Hartley, DeCesaro, and Doe. We review the grant of a motion to dismiss de novo. Coll, 642 F.3d at 886. Ankeney alleges that these supervisors violated his Eighth Amendment rights because they "created and/or participated in a plan or scheme to deny [his] constitutional rights in order to save money." He alleges that a CDOC medical officer admitted as much in her deposition testimony, but has not provided the deposition transcript. Because Ankeney offers only conclusory statements to substantiate his claim that senior prison officials

personally participated in the deprivation of his rights, we determine that the district court properly granted defendants' motion to dismiss.

## E

Finally, Ankeney claims that the district court erred in denying his motion for injunctive relief. We review the denial of a motion for injunctive relief for abuse of discretion. See Camfield v. City of Okla. City, 248 F.3d 1214, 1234 (10th Cir. 2001). Because we agree with the district court that Ankeney's claims are without merit, we conclude that the court properly denied his motion for injunctive relief.

## III

**AFFIRMED**. Ankeney's motion for leave to proceed without prepayment of costs or fees is **GRANTED**, but he is reminded to continue making monthly payments until the filing fee is paid in full.

Entered for the Court

Carlos F. Lucero
Circuit Judge